**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2826
_____

In re: MCGRAW-HILL GLOBAL EDUCATION
HOLDINGS LLC;
MCGRAW-HILL SCHOOL EDUCATION
HOLDINGS LLC,
Petitioners
_____

On a Petition for Writ of Mandamus from the
United States District Court for the Eastern District of
Pennsylvania
Related to District Court No. 2-17-cv-01818
District Judge: The Honorable Wendy Beetlestone
_____

No. 17-3444
_____

In re:
BOB KRIST,
Petitioner

_____

On a Petition for Writ of Mandamus from the
United States District Court for the Eastern District of
Pennsylvania
Related to District Court No. 2-16-cv-06248
District Judge: The Honorable Cynthia M. Rufe

Argued March 21, 2018

Before: SMITH, *Chief Judge*, HARDIMAN, and ROTH,
*Circuit Judges*.

(Filed: November 21, 2018)

Christopher P. Beall
Fox Rothschild
100 Park Avenue
17th Floor
New York, NY  10178

Michael Beylkin
Fox Rothschild
1225 17th Street
Denver, CO  80202

Beth L. Weisser                    **[ARGUED]**
Fox Rothschild
2000 Market Street

2

20th Floor
Philadelphia, PA 19103
  *Counsel for McGraw-Hill Global Education*
  *Holdings LLC and McGraw-Hill School Education*
  *Holdings LLC*

Gregory Albright
Harmon Seidman Bruss & Kerr
485 Dorset Street
Cambria, CA 93428
  *Counsel for Bob Krist*

Maurice Harmon     **[ARGUED]**
Harmon & Seidman
11 Chestnut Street
New Hope, PA 18938
  *Counsel for Ed Kashi and Bob Krist*

_____

OPINION OF THE COURT
_____

SMITH, *Chief Judge*.

These consolidated mandamus petitions require us to decide whether two professional photographers bringing separate copyright infringement actions are bound by a forum selection clause in contracts they did not

3

sign. We conclude that the photographers are not bound because they are not intended beneficiaries of the agreements, nor are they closely related parties. Our conclusion means that one District Court got it right, and the other got it wrong. But mandamus is an extraordinary remedy. Because the erring District Court's mistakes were not clear or indisputable, we decline to issue the writ.

## I. Background

Ed Kashi and Bob Krist are professional photographers. Kashi resides in Montclair, New Jersey, while Krist resides in New Hope, Pennsylvania. To market their photographs, Kashi and Krist entered into representation agreements with Corbis Corporation, a stock photography agency. The agreements provided Corbis authority to sub-license the photographers' works to third parties on a non-exclusive, fixed-duration basis. In exchange, Kashi and Krist received a percentage of the fees negotiated by Corbis. The fees were reported to the photographers in periodic royalty statements. The royalty statements listed each photograph licensed and the fees collected, but did not identify the product in which the photograph would be used or specify the scope of the license. In addition to the royalty statements, the photographers had the right to request an audit once a year of Corbis' records with respect to their images.

The legal terms of the representation agreements

were robust. Exemplar agreements in the record[1] include assignment of rights to recover, as well as forum selection clauses. Paragraph 6, titled "Protection of Accepted Images," reads:

> **Corbis, in its sole discretion and without obligation to do so, shall have full and complete authority to make and settle claims or to institute proceedings in Corbis' or your name but at Corbis' expense to recover damages for Accepted Images lost or damaged by customers or other parties and for the unauthorized use of Accepted Images.** You shall provide reasonable assistance in Corbis' efforts in

---

[1] The actual representation agreements signed by Kashi and Krist are not in the record. However, exemplar agreements signed by other photographers and submitted as evidence in other actions are included. Counsel for Kashi and Krist acknowledged at oral argument that the exemplar representation agreements were similar to those signed by Kashi and Krist. Oral Arg. 30:38–31:15; *see also* Kashi Resp. 39–40 (conceding that Kashi's representation agreement contained a New York forum selection clause). Counsel did not indicate any material differences between the photographers' agreements and the exemplar agreements, and also acknowledged that the exemplar agreements were available to the District Court judges. Oral Arg. 48:21–49:08.

> connection with such claims or proceedings. Any recovery, after payment of all costs and expenses including outside attorneys' fees, shall be treated as Revenue and you shall receive the appropriate royalty, or 100% in the case of lost/damaged images. **Following your notification, if Corbis declines to bring such a claim within sixty (60) days, we shall notify you, and you may bring actions in your own name at your own expense and retain all recoveries.**

Krist App'x 132 (emphasis added). A forum selection clause in paragraph 12.3, titled "Law," reads:

> This Agreement shall be governed by the laws of the State of New York, irrespective of its conflict of law rules. In any action arising out of this Agreement, you consent to personal jurisdiction and the exclusive venue of the state and federal courts sitting in New York City, New York.

MHE App'x 308, 320, 332, 354; Krist App'x 133.[2]

---

[2] One of the exemplar representation agreements provided in the record prescribes King County, Washington, rather than New York, New York, as the forum. This fact is inconsequential because neither Kashi

6

Acting upon its authority under the representation agreements, Corbis sub-licensed Kashi and Krist's photographs to McGraw-Hill Global Education Holdings LLC and McGraw-Hill School Education Holdings LLC (collectively "McGraw-Hill" or "MHE"), publishers of educational materials for K–12, college, and post-graduate students. Corbis utilized a two-step process in sub-licensing photographs to McGraw-Hill. First, Corbis negotiated a series of master agreements known as "Preferred Pricing Agreements" (PPAs), which set forth volume-based pricing and other terms. Second, Corbis issued invoices for all of McGraw-Hill's licensure purchases. The invoices constituted McGraw-Hill's license to use each image. They detailed the scope of the license, including limitations "by publication, number of copies, distribution area, image size, language, duration and/or media (print or electronic)." MHE App'x 165. The invoices also listed the price to be paid by McGraw-Hill for each image, and included the name of the photographer responsible for the work.

Each invoice incorporated by reference Corbis' standard "Terms and Conditions," which governed the transaction alongside the terms set forth in the PPAs. Both the Terms and Conditions and the PPAs included mandatory, exclusive forum selection clauses, with nearly

---

nor Krist allege that *their* representation agreements provided for a forum other than New York, New York.

identical language. Titled "Choice of Law / Jurisdiction / Attorneys' Fees," the clause reads in part:

> Any dispute regarding this Agreement shall be governed by the laws of the State of New York, and by Titles 15, 17 and 35 of the U.S.C., as amended, and the parties agree to accept the exclusive jurisdiction of the state and federal courts located in New York, New York, regardless of conflicts of laws.

MHE App'x 284 (2014 PPA); *cf. id.* at 237 (Terms and Conditions revised Nov. 19, 2001). The only material difference between the forum selection clauses in the PPAs and in the Terms and Conditions is that the PPAs specify "New York, New York" as the forum, *id.* at 284, while the Terms and Conditions specify "New York, USA," *id.* at 237.[3]

---

[3] Any difference in the forum selection clauses contained in the PPAs and the Terms and Conditions is not discussed by either the parties or the two District Court judges. Thus, we will refer to the clauses singly as the "Corbis forum selection clause" or "Corbis FSC."

The parties *do* dispute whether the forum selection clauses contained in Kashi and Krist's *representation agreements* are "identical in substance" to those contained in the McGraw-Hill agreements. *Compare* MHE Resp. 3 n.2 *with* Krist Reply 17. We consider this argument below in Section III.B.

8

In 2016 and 2017, respectively, Krist and Kashi each brought a copyright action against McGraw-Hill in the Eastern District of Pennsylvania. Krist and Kashi both allege that McGraw-Hill used their photographs beyond the terms of the Corbis licensure agreements, in violation of federal copyright law. The photographers allege a range of ways in which their photographs were used without permission, including exceeding the allowed number of publications printed, the geographic distribution area, the type of medium, and the time period for publication. In each proceeding, McGraw-Hill moved to transfer venue under 28 U.S.C. § 1404(a). It argued that the disputes implicate the Corbis–McGraw-Hill agreements, and that per the terms of those agreements, the proper venue was the United States District Court for the Southern District of New York.

The Honorable Wendy Beetlestone, presiding over the *Kashi* action, denied the transfer motion. Judge Beetlestone reasoned that because Kashi's claims are based purely on copyright law, the action is not a "dispute regarding th[e] Agreement[s]," and thus not subject to the forum selection clauses contained in the Corbis–McGraw-Hill agreements. MHE App'x 5. Judge Beetlestone further concluded that, absent an applicable forum selection clause, McGraw-Hill had not met its burden under § 1404(a) to warrant a transfer.

The Honorable Legrome Davis, considering a parallel motion in the *Krist* action, reached the opposite

9

conclusion. Judge Davis determined that the dispute *is* a dispute regarding the agreements, because the copyright claims depend upon the interpretation of the Corbis–McGraw-Hill agreements. Judge Davis held that despite Krist's status as a non-signatory, he was subject to the forum selection clause as an intended third-party beneficiary. Judge Davis also concluded that it was foreseeable that Krist would be bound under the Corbis forum selection clause. In light of those findings, Judge Davis granted the § 1404(a) transfer. [4]

McGraw-Hill proceeded to file a petition for a writ of mandamus, asking this Court to direct a transfer of the *Kashi* action. Krist also petitioned for a writ of mandamus, doing so after his motion for reconsideration was denied. Krist asks this Court to direct a vacatur of the transfer order. The petitions were consolidated and referred to this panel. They present a range of doctrinal issues bearing on the ultimate question: whether either District Court erred in such a manner that mandamus is warranted. Numerous other actions implicating the Corbis forum selection clause have been adjudicated in the Eastern District of Pennsylvania, which have similarly yielded divergent results. The petitioners argue that the divergence of views speaks to the need for a ruling on mandamus. We agree that clarity is needed, yet the reasoned divergence of views

---

[4]     Following Judge Davis' transfer order, but prior to the transfer being effectuated, the case was reassigned to the Honorable Cynthia M. Rufe.

10

militates against granting the writ.

## II. Jurisdiction, Standard of Review, and Applicable Law

## A. Jurisdiction

Our jurisdiction over this mandamus action falls under the All Writs Act, codified at 28 U.S.C. § 1651. The District Court had federal question jurisdiction over both copyright infringement actions pursuant to 28 U.S.C. § 1331, and power to transfer those actions under 28 U.S.C. § 1404. Because we have the power to review a district court's transfer order upon entry of final judgment, 28 U.S.C. § 1291, we may also review such an order on mandamus. *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 399 (3d Cir. 2017); *Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 773 (3d Cir. 1984). We exercise plenary review over the legal determinations underlying a district court's grant or denial of a § 1404(a) transfer. *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 30 (3d Cir. 1993).

Because Judge Davis ordered a transfer, the *Krist* action is no longer pending in the Third Circuit. Yet we still retain jurisdiction over transferred cases until the transferee court "proceeds" with the action. *Howmedica*, 867 F.3d at 400. "[O]nce the transferee court proceeds with the transferred case, the decision as to the propriety of transfer is to be made in the transferee court." *In re United States*, 273 F.3d 380, 384 (3d Cir. 2001). However,

11

the term "proceeds" is interpreted as more than, for example, the mere entry of a scheduling order. *Howmedica*, 867 F.3d at 400. In the typical case, so long as the party seeking mandamus has "acted with sufficient dispatch," we will retain jurisdiction. *In re United States*, 273 F.3d at 384.

For example, in *Howmedica* the plaintiff waited twenty-seven days before seeking mandamus, and the transferee court had issued two case management orders during that time. 867 F.3d. at 400. In *In re United States*, the government waited thirty-three days to seek mandamus, and the transferee court had already issued a scheduling order. *Id.* (citing *In re United States*, 273 F.3d at 382, 384; Order, *United States v. Streeval*, No. 01-cv-0084 (M.D. Tenn. June 6, 2001), ECF No. 12). In both cases, we concluded that our jurisdiction was proper because the petitioners had acted with sufficient dispatch. *Id.*

Here, the transfer was docketed in the Southern District of New York (S.D.N.Y.) on October 24, 2017. The operative start date for our purposes is, however, October 6, 2017, when the case was reassigned to Judge Rufe and Krist's motion for reconsideration was "implicitly denied." Krist Pet'r 5, 10. Krist filed his petition for a writ of mandamus in this Court on November 8, 2017. That amounts to thirty-three days between the October 6, 2017 transfer and the November 8, 2017 filing of Krist's mandamus petition. Krist Pet'r 5.

12

As for action in the transferee court, Krist filed a letter motion requesting a stay on November 9, 2017. The Honorable Loretta Preska in the S.D.N.Y. granted the stay on December 4, 2017, after receiving notification that this Court had referred the mandamus petition to a merits panel. Judge Preska entered no other orders on the transferred action. Thus, the transferee court cannot be said to have "proceeded" with the action.

Krist's thirty-three day delay is the same as has previously been deemed "sufficient dispatch." And because the transferee court has not "proceeded" with the action, we retain jurisdiction.

## B. Mandamus Standard

Relief via a writ of mandamus is "extraordinary" and is typically appropriate "only upon a showing of (1) a clear abuse of discretion or clear error of law; (2) a lack of an alternate avenue for adequate relief; and (3) a likelihood of irreparable injury." *United States v. Wright*, 776 F.3d 134, 146 (3d Cir. 2015). The writ will issue only if the party seeking the writ "meets its burden to demonstrate that its right to the writ is clear and indisputable." *Sunbelt Corp.*, 5 F.3d at 30 (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 919 F.2d 225, 232 (3d Cir. 1990)).

These mandamus actions arise out of motions to transfer venue under 28 U.S.C. § 1404(a). In the venue transfer context, the three-factor mandamus test collapses into the first factor. *Howmedica*, 867 F.3d at 401. That is

13

so because transfer orders "as a class" meet the second and third requirements. *Id.* The second requirement is met because "the possibility of an appeal in the transferee forum following a final judgment . . . is not an adequate alternative to obtain the relief sought." *Sunbelt Corp.*, 5 F.3d at 30. The third factor is also met "because an erroneous transfer may result in 'judicially sanctioned irreparable procedural injury.'" *Howmedica*, 867 F.3d at 401 (quoting *Chi., R.I. & P.R. Co. v. Igoe*, 212 F.2d 378, 381 (7th Cir. 1954)).

Despite the elimination of the second and third factors, the first factor, "a clear and indisputable 'abuse of discretion or . . . error of law,'" remains a high bar. *Id.* (quoting *Wright*, 776 F.3d at 146). As the Fifth Circuit has explained, "we require more than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion." *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015). "[E]ven reversible error by itself is not enough to obtain mandamus." *Id.* Instead, errors of law must "at least approach[] the magnitude of an unauthorized exercise of judicial power, or a failure to use that power when there is a duty to do so." *Commc'n Workers of Am., AFL-CIO v. Am. Tel. & Tel. Co.*, 932 F.2d 199, 208 (3d Cir. 1991) (quoting *Lusardi v. Lechner*, 855 F.2d 1062, 1069 (3d Cir. 1988)). This is so because "mandamus must not become a means by which the court corrects all potentially erroneous orders." *Lloyd's*, 780 F.3d at 290 (*citing In re*

14

*Volkswagen of Am., Inc.,* 545 F.3d 304, 309 (5th Cir. 2008)).

Moreover, we retain discretion to deny the writ even in the face of such errors. *Commc'n Workers of Am.,* 932 F.2d at 208. We have admonished judges to "proceed both carefully and courageously" in exercising their discretion. *Lusardi*, 855 F.2d at 1070.

## C. Venue Transfer Standard

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district where the case might have been brought, or to which the parties have consented, for the convenience of the parties and witnesses and in the interest of justice. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).

The § 1404(a) movant bears the burden of persuasion. *Id*. at 879. Factors the court must consider include the three enumerated under the statute— convenience of the parties, convenience of the witnesses, and the interests of justice—along with all other relevant private and public factors, including the plaintiff's choice of forum and the local interest in deciding local controversies close to home. *Atlantic Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 62 n.6 (2013) (non-exhaustive list of factors). Courts consider these factors to determine, on balance, whether the litigation would "more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d

15

at 879 (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *FEDERAL PRACTICE AND PROCEDURE*, § 3847 (2d ed. 1986)).

In 2013, the Supreme Court held that the traditional balancing test is modified when a forum selection clause applies to a dispute. *Atlantic Marine*, 571 U.S. at 63. In the face of a valid forum selection clause, a district court modifies its analysis in three ways. First, no weight is given to the plaintiff's choice of forum. *Id.* Second, the court does not consider arguments about the parties' private interests. *Id.* at 64. Instead, "a district court may consider arguments about public-interest factors only." *Id.* Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6, (1981)). The Supreme Court recognized that because the public interest factors—the only factors that remain to be balanced—"will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* (citation omitted). "In all but the most unusual cases," the parties will be held to their bargained-for choice of forum. *Id.* at 66.

16

## D. Applicable Law

Federal law controls the question of whether to enforce a forum selection clause. *Howmedica*, 867 F.3d at 407 n.11 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)); *Jumara*, 55 F.3d at 877; *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007) ("[F]ederal law should be used to determine whether an otherwise mandatory and applicable forum clause is enforceable . . . because enforcement of forum clauses is an essentially procedural issue."). However, "[t]he interpretation of a forum selection clause is an analytically distinct concept from the enforceability of that clause." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017). "The question of the scope of a forum selection clause is one of contract interpretation." *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997). Our case law directs us to use state law to determine the scope of a forum selection clause—that is, "'whether the claims and parties involved in the suit are subject' to the clause." *Collins*, 874 F.3d at 180 (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)). State law, therefore, typically governs whether the clause covers a particular claim, as well as whether the clause applies to a non-signatory as an intended beneficiary or closely related party. *Collins*, 874 F.3d at 183–85 (applying Texas law to determine whether plaintiff's New Jersey Wage Payment Law claim fell within the scope of forum selection clause); *E.I. DuPont*

*de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196–98 (3d Cir. 2001) (applying Delaware law to determine whether party was third-party beneficiary or closely related); *Martinez*, 740 F.3d at 221–24 (explaining that federal law should not be used to determine the scope of a forum selection clause in a federal-question case); *cf. Wyeth*, 119 F.3d at 1074 (acknowledging applicability of English law but applying "general contract law principles" in light of the parties' briefing).

Parties are generally free to specify which law governs a contract's interpretation, and may agree to modify the choice specified in the contract. *See Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 438 (7th Cir. 2012). The Corbis forum selection clause includes a choice of law provision specifying the laws of the State of New York. *See* MHE App'x 284 (2014 PPA). Yet for purposes of determining whether the claims are subject to the clause, the parties cite federal case law. For purposes of determining whether the clause can be applied to Kashi and Krist, the photographers cite New York law and federal case law governing third party beneficiaries, and only federal case law as to the closely related parties doctrine. McGraw-Hill cites only federal case law. Of course, McGraw-Hill seeks to enforce an agreement containing a New York choice of law clause and thus can hardly object to the invocation of New York law in analyzing whether Kashi and Krist are intended

18

beneficiaries. *See Collins*, 874 F.3d 180–81. In these circumstances—notwithstanding our usual approach of applying state law to both the claim and party components of the question of scope—as the parties agree in their briefing about the law governing two of the three components, we will accept the parties' stipulation. *See Wyeth*, 119 F.3d at 1074; *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 438 (7th Cir. 2012); *Phillips*, 494 F.3d at 386. We will therefore apply federal law to evaluate whether the clause covers the claims, New York law to assess whether the photographers should be bound by the clause as intended beneficiaries, and federal law in evaluating whether Kashi and Krist are closely related parties.

Finally, if we determine that the disputes fall within the *scope* of the forum selection clause *and* that the clause *applies* to the non-signatory photographers, we will look to this Court's precedent to determine whether we would *enforce* the clause for purposes of the § 1404(a) motions.

## III. Analysis

There are four substantive issues that bear on whether the forum selection clause applies to the photographers and whether transfer was appropriate. First, we must consider whether Kashi and Krist are bound by the terms of the agreements between McGraw-Hill and Corbis—agreements neither Kashi nor Krist signed. Under traditional principles of contract law, non-

19

signatories may be bound by a forum selection clause if they are intended third-party beneficiaries of the contract, or if they are closely related parties. *See DuPont*, 269 F.3d at 194–99 (considering doctrines in the context of an arbitration clause); *In re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions*, 133 F.3d 225, 229 (3d Cir. 1998) ("As this court has previously recognized, 'a variety of nonsignatories of arbitration agreements have been held to be bound by such agreements under ordinary common law contract and agency principles.'") (quoting *Barrowclough v. Kidder, Peabody & Co., Inc.*, 752 F.2d 923, 938 (3d Cir. 1985) (citations omitted), *overruled on other grounds by Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1112 (3d Cir. 1993)); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1298 n.9 (3d Cir. 1996) (noting that arbitration agreements are "a specialized kind of forum-selection clause") (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 (1974)). Second, our cases and those of other circuits establish that we will not enforce a forum selection clause against a non-signatory unless such enforcement was foreseeable to the non-signatory. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989); *Howmedica*, 867 F.3d at 407 n.13 (listing cases). Third, the dispute itself must fall within the scope of the forum selection clause. The parties do not invoke New York substantive law on this point. Instead, the parties make much of whether, under this Court's

20

precedent, any asserted license is part of the plaintiffs' *prima facie* case or merely a defense. Fourth, we consider whether the *Atlantic Marine*-modification to the § 1404(a) analysis applies when non-signatories are bound by a forum selection clause.

## A. Are Kashi and Krist bound by the forum selection clause?

Contrary to the District Court's ruling in the *Krist* action, we conclude that the photographers were not intended third-party beneficiaries of the agreements between McGraw-Hill and Corbis. Nor are they bound under the closely related parties doctrine. The photographers therefore are not subject to the forum selection clause.

### i. The photographers are not intended third-party beneficiaries.

A non-signatory may be bound by a contractual forum selection clause if he is an intended third-party beneficiary to the contract. *DuPont*, 269 F.3d at 195 (citing *Coastal Steel Corp.*, 709 F.2d at 202–04). The New York Court of Appeals has adopted the Restatement (Second) of Contracts for determining third-party beneficiary status. *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (citing *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 212 (N.Y. 1985)). As the Restatement explains:

21

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1981) ("Restatement").

The touchstone is the parties' intent, primarily as reflected in the language of their contract: "The intention to benefit the third party must appear from the four corners of the instrument . . . [and] must be that of both parties to the . . . contract." *Stainless, Inc. v. Employers Fire Ins. Co.*, 69 A.D.2d 27, 33–34 (N.Y. App. Div. 1979), *aff'd*, 406 N.E.2d 490 (N.Y. 1980). "A court in determining the parties' intention should consider the circumstances surrounding the transaction as well as the actual language of the contract." *Subaru Distribs. Corp.*, 425 F.3d at 124

22

(quoting Restatement § 302, Reporter's Note cmt. a). As an example, "[a] contractual requirement that the promisor *render performance directly to the third party* shows an intent to benefit the third party." *Id.* (emphasis added). As the First Circuit has explained: "The *structure* of the performance required under the particular contract often provides the critical indicum [sic] of intent in third party beneficiary cases. Unless the performance required by the contract will *directly* benefit the would-be intended beneficiary, he is at best an incidental beneficiary." *Pub. Serv. Co. of New Hampshire v. Hudson Light & Power Dep't*, 938 F.2d 338, 342 (1st Cir. 1991).

McGraw-Hill makes two arguments for why the photographers are *intended* beneficiaries of its agreements with Corbis. First and foremost, McGraw-Hill argues that the photographers benefit *directly* from the agreements. Second, it argues that the listing of the photographers' names on the Corbis invoices demonstrates McGraw-Hill's and Corbis' intent to benefit the photographers.

We reject McGraw-Hill's first argument out-of-hand. The photographers were not entitled to any compensation as a *direct* result of the Corbis–McGraw-Hill agreements. The photographers receive compensation only by operation of the separate representation agreements they entered into with Corbis. McGraw-Hill points to no provision of the PPAs or invoices that directly entitles either photographer to anything.

23

Moreover, McGraw-Hill's "direct" beneficiary theory is contrary to the examples provided in the Restatement. As an illustration from the Restatement explains: "B contracts with A to buy a new car manufactured by C. C is an incidental beneficiary, even though the promise can only be performed if money is paid to C." Restatement cmt. e. ills. 17. The manufacturer in that illustration is not a party to the sale, and it is not owed performance under the terms of the sale. Rather, it is owed performance under the terms of its contract with the dealer. Likewise here, the photographers are *incidental* beneficiaries of the Corbis–McGraw-Hill agreements; they are owed compensation only by virtue of *their own* contracts with Corbis.

Judge Davis reasoned that the *limitations* contained in agreements between McGraw-Hill and Corbis directly benefit the photographers. He explained that Krist benefits from the limitations on the use of the copyrighted material, including limitations on the size of the images, numbers of copies, and duration of use. Krist App'x 375. Judge Davis stated that "[p]rovisions limiting the actions of a contracting party that are intended to benefit a third party make the third party an intended beneficiary." *Id.* For this proposition, Judge Davis cited an illustration from the Restatement. In it, a downstream landowner is an intended beneficiary of a contract between an operator of a fertilizer plant and a municipal sewer authority because the contract includes a term intended to prevent harm to that

24

landowner, namely, a term requiring the removal of specified types of waste from the fertilizer plant's wastewater. *Id.* (citing Restatement cmt. d. ills. 10). We cannot agree. Krist is the exclusive owner of the rights to reproduce, distribute, and display the photographs by virtue of the Copyright Act. McGraw-Hill is an infringer to the extent it exceeds any license that Krist or a sub-licensor granted it. The limitations in the license are not a contractual benefit to Krist, because his right to those limitations arises from the Copyright Act.

Judge Davis also reasoned that the invoices' "specific listing of the copyright holder for each licensed image evidences the intent of the parties to benefit the copyright holders." Krist App'x 376. Kashi and Krist do not offer a strong rebuttal to this reasoning. At oral argument, counsel for the photographers suggested that the identification of the photographers was for the sole purpose of enabling the publisher to list a photo credit, as was required for purposes of the publication. Oral Arg. 22:33–22:50. Overall, Judge Davis did not place strong emphasis on this point, and the invoices alone do not provide sufficient evidence of an intent to bestow contractual rights or benefits on the photographers. For example, in one of the illustrations from the Restatement quoted above, although the name of the car manufacturer will likely be listed on the contract between the buyer and seller, the manufacturer is still not an intended beneficiary of that contract.

25

Finally, the photographers argue that McGraw-Hill should be estopped from asserting an intended third-party beneficiary argument because of a position it took in prior litigation over the Corbis agreements. McGraw-Hill argues vigorously against estoppel. In light of our conclusion that the photographers are not intended third-party beneficiaries, we need not consider the application of estoppel. We do, however, take note of McGraw-Hill's previous arguments.

In an earlier case in the Southern District of New York, a photographer in privity with Corbis attempted to assert rights under the Corbis–McGraw-Hill agreements, including a provision that entitled Corbis to bill the publisher "ten (10) times the normal license fee for any unauthorized use."[5] Defending against the photographer's

---

[5] *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 349, 359 (S.D.N.Y. 2014) ("Plaintiff's breach of contract claim seeks to enforce, in his own right, the Corbis Agreements that Plaintiff alleges govern the relationship between Corbis and [McGraw-Hill]. Specifically, Plaintiff seeks to recover under the Ten Times Provision in those contracts.").

The "Ten Times Provision" is contained within a paragraph of the Corbis Terms and Conditions titled "Unauthorized Use." It reads:

> Without limitation, Images may not be utilized as a trademark or service mark, or for

26

right to bring an action under the contract to which it was a non-signatory, McGraw-Hill argued that the photographers were *not* intended third-party beneficiaries. In its briefing on a motion to dismiss, McGraw-Hill

> any pornographic use, unlawful purpose or use, or to defame any person, or to violate any person's right of privacy or publicity, or to infringe upon any copyright, trade name, trademark, or service mark of any person or entity. **Unauthorized use of these Images constitutes copyright infringement and shall entitle Corbis to exercise all rights and remedies under applicable copyright law**, including an injunction preventing further use and monetary damages against all users and beneficiaries of the use of such Images. **Corbis in its sole discretion reserves the right to bill you (and you hereby agree to pay) ten (10) times the normal license fee for any unauthorized use**, in addition to any other fees, damages, or penalties Corbis may be entitled to under this Agreement or applicable law. The foregoing is not a limiting statement of Corbis' rights or remedies in connection with any unauthorized use.

MHE App'x 236; Krist App'x 145 (emphasis added).

cogently summarized the intended third-party beneficiary doctrine, then argued that the Corbis Terms and Conditions "identify as the parties to their arrangements only MHE and Corbis, and they contain both anti-assignment and integration clauses and *do not identify any third party in their choice of forum provisions*." Krist App'x 439 (emphasis added). McGraw-Hill argued that this "strongly suggest[s] that the two parties to the contract intended the contract to concern and to benefit only themselves." *Id.* at 439–40 (quoting *Subaru Distribs. Corp.*, 425 F.3d at 125). We consider this reasoning compelling, much more so than the arguments in favor of contractual third-party beneficiary status that McGraw-Hill has raised in these cases. We also note that while McGraw-Hill made a full-throated explication of the intended third-party beneficiary doctrine in the *Lefkowitz* matter—in order to argue *against* the doctrine's application—McGraw-Hill only feebly invoked the doctrine before the District Court in the cases before us. Indeed, as McGraw-Hill concedes in a supplemental letter brief, the term "intended beneficiary" did not appear in their opening briefs filed in the District Court.

### ii. The photographers are not closely related parties.

McGraw-Hill invokes another doctrine to argue that the photographers should be bound as non-signatories to the Corbis–McGraw-Hill agreements: the closely related

28

parties doctrine.[6] The closely related parties doctrine is a form of equitable estoppel. This Court recognized in

---

[6]        There is some ambiguity in our cases concerning whether we even recognize the closely related parties doctrine. In *Dayhoff*, the court declined to allow non-signatories to invoke an arbitration agreement. 86 F.3d at 1296. *Howmedica* relied on *Dayhoff* in declining to apply the doctrine. *Howmedica*, 867 F.3d at 407 ("We have held, however, that a forum-selection clause 'can be enforced only by the signator[y] to [the] agreement[ ].'") (alterations in original) (quoting *Dayhoff*, 86 F.3d at 1293–97)). The photographers read *Howmedica* as repudiating the closely related parties doctrine *writ large*. Kashi Resp. 33–34; Krist Pet'r 17. But *Howmedica* did not foreclose the doctrine entirely and, indeed, proceeded to analyze whether the defendants there would constitute "closely related parties" if the doctrine were applicable. *See* 867 F.3d at 407 n.13. Moreover, cases decided before *Howmedica* did not read *Dayhoff* as setting forth such a bright-line rule. *See Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015) (affirming a district court's application of the closely related doctrine, permitting the *non-signatory* to enforce a forum selection clause against a *signatory*); *DuPont*, 269 F.3d at 199 ("We have never applied an equitable estoppel theory to bind a non-signatory to an arbitration clause although there appears to be no reason why, in an

29

*DuPont* that it had "never applied an equitable estoppel theory to bind a non-signatory to an arbitration clause although there appears to be no reason why, in an appropriate case, we would refrain from doing so." 269 F.3d at 199.

"In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015) (permitting non-

---

appropriate case, we would refrain from doing so."). The *DuPont* Court described *Dayhoff* in a parenthetical as holding that "non-signatories could not enforce arbitration clause against signatory *where no exception applied*, but successor to signatory could compel arbitration." 269 F.3d at 195 (emphasis added) (citing *Dayhoff*, 86 F.3d at 1294–96); *see also Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 440 (7th Cir. 2012) (characterizing *Dayhoff*'s reluctance to bind non-signatories as consequence of considerations unique to arbitration agreements, namely surrendering one's right to adjudication before a court). And we have otherwise suggested that non-signatories may be bound to contractual terms under traditional principles of contract and agency law. *In re Prudential*, 133 F.3d at 229.

signatory to enforce forum selection clause *against signatory* under the closely related parties doctrine).

Here, it is clear that the photographers are not in an ownership or subsidiary relationship with Corbis. The record establishes only that they were in privity with Corbis for the purpose of licensing artwork. Moreover, there is no evidence that the photographers were involved in contract negotiations between Corbis and McGraw-Hill. Finally, the photographers did not, in any natural reading of the word, receive a "direct" benefit from the Corbis–McGraw-Hill agreements. Accordingly, there is precious little basis for applying the closely related parties doctrine.

### iii. Despite error, mandamus is not warranted on this issue alone.

Having concluded that the District Court in *Krist* erred in its conclusion that Krist has intended third-party beneficiary status and in transferring his case on the basis that the forum selection clause applied to him, we must next consider whether this error was a "clear and indisputable abuse of discretion or . . . error of law." *Howmedica*, 867 F.3d at 401. We do not find Judge Davis' error here so clear as to meet that standard. Judge Davis was correct that the photographers were identified in each invoice. And while we disagree with his conclusion that the invoices rendered Krist a direct beneficiary, the result, as it pertains to this conclusion, cannot be said to

31

"approach[] the magnitude of an unauthorized exercise of judicial power." *Commc'n Workers of Am.*, 932 F.2d at 208. Even if we were to conclude that this error did meet that standard, we retain discretion over whether to grant the writ. *Id.* We discern no basis for exercising that discretion.

Many photographers have sought to invoke the terms of the Corbis–McGraw-Hill agreements in order to pursue breach of contract claims against McGraw-Hill. While arguments raised in other cases do not bind us, we do consider the larger jurisprudential landscape in the context of mandamus. We acknowledge the existence of a sharp split in the decisions of judges in the Eastern District of Pennsylvania and within the District of New Jersey on the question of the applicability of the forum selection clause at issue here. Some of those decisions have concluded that photographers were intended beneficiaries of the Corbis–McGraw-Hill agreements, or that the photographers were so closely related to those agreements that enforcement of the forum selection clause was justified.[7] Having reviewed the analysis in the other cases

---

[7]     *Steinmetz v. Scholastic Inc.*, No. 16-cv-3583, 2017 WL 4082681, at *2 (D.N.J. Sept. 15, 2017) (Hayden, J.) (considering Corbis to be plaintiff's agent and applying closely related parties doctrine); *Yamashita v. Scholastic Inc.*, No. 16-cv-3839, 2016 WL 6897781, at *2 (D.N.J. Nov. 21, 2016) (Chesler, J.) (holding that Corbis was

32

plaintiff's agent and that the action was one "regarding" the contract because it "arises from a dispute over whether Scholastic used Plaintiff's photographs outside the terms of the licenses obtained under the [PPAs]"); *Keller v. McGraw-Hill Glob. Educ. Holding, LLC*, No. 16-cv-1778, 2016 WL 4035613, at *6 (E.D. Pa. July 28, 2016) (Slomsky, J.) ("Plaintiff is a non-signatory third-party who is bound by the forum-selection clause because of his underlying contractual relationship with [Corbis]."). *But see Krist v. Pearson Educ., Inc.*, 263 F. Supp. 3d 509, 511–14 (E.D. Pa. 2017) (McHugh, J.) (finding that Corbis was not plaintiff's agent and that plaintiff cannot be bound by Corbis FSC where not signatory to contract and not seeking to invoke contract; holding that closely related doctrine applies only where non-signatory defendants had involvement with contract or sought to enforce it); *Krist v. Scholastic, Inc.*, 253 F. Supp. 3d 804, 809–11 (E.D. Pa. 2017) (Rufe, J.) (holding that the Corbis FSC does not govern the copyright claim, and holding that the FSC does not bind plaintiff as non-party because he is not the intended beneficiary, and declining to apply closely related doctrine); *Steinmetz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 220 F. Supp. 3d 596, 604 (E.D. Pa. 2016) (Robreno, J.) (holding that Corbis FSC's application to "[a]ny dispute regarding this agreement" does not broadly apply to "any type of intellectual property dispute that conceivably could arise between Defendants and the

and the arguments raised in those actions, we cannot conclude that the error committed by Judge Davis is clear and indisputable.

Even so, we proceed to analyze other issues addressed by the two District Court judges, because a clear and indisputable error on any determination necessary for transfer might warrant mandamus.

## B. Was enforcement foreseeable?

Foreseeability is a prerequisite to applying the closely related parties doctrine. That is, before binding a non-signatory as a closely related party, we require a finding that enforcement of the clause by or against the non-signatory would be foreseeable. *See Howmedica*, 867 F.3d at 407 n.13; *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993). Likewise, we require a foreseeability finding when enforcing a forum selection clause against

owner of any intellectual property that Defendants might license from Corbis"); *Eastcott v. McGraw-Hill Global Educ. Holdings, LLC,* No. 16-cv-904, 2016 WL 3959076, at *1 (E.D. Pa. July 22, 2016) (McHugh, J.) (rejecting closely related argument on grounds that only "19 of the 274 total claims or less than 7% to be exact" implicate the agreement with the Corbis FSC).

34

an intended beneficiary. In *Coastal Steel*, we held that the plaintiff could not avoid a forum selection clause on account of its third-party beneficiary status. 709 F.2d at 203. We reasoned:

> Coastal chose to do business with Farmer Norton, an English firm, knowing that Farmer Norton would be acquiring components from other English manufacturers. Thus it was perfectly foreseeable that Coastal would be a third-party beneficiary of an English contract, and that such a contract would provide for litigation in an English court.

*Id.* As the quoted language indicates, *Coastal Steel* recognized not only that it was foreseeable that the non-signatory would be a third-party beneficiary, or that the contract would contain a forum selection clause, but also that the forum selection clause would provide for a specific forum convenient to the signatory.

Judge Davis recognized the foreseeability requirement in *Krist*. He first concluded that it was foreseeable to Krist that Corbis would contract with licensees, and that Krist may be a third-party beneficiary to those agreements. Krist App'x 377. This much is obvious: Krist entered into an agreement with Corbis *for the very purpose* of having Corbis sub-license his photographs. And because Krist was owed monetary

35

compensation under his agreement with Corbis, it was foreseeable that he may have been deemed an intended beneficiary of those agreements. It is also foreseeable that Corbis' contracts with licensees would contain forum selection clauses. After all, the photographers' own contracts with Corbis contained such clauses, and as the District Court reasoned, they are quite common. *Id.* (citing secondary source material). But the District Court made no finding that Krist could have foreseen that those clauses would specify New York, New York as a forum. While the District Court noted that Corbis' standard Terms and Conditions were published on Corbis' webpage, the District Court made no finding that Krist had ever visited the webpage or had seen an explicit reference to those terms and conditions. The fact that it was *possible* for Krist to access the Terms and Conditions on the website does not establish that it was foreseeable that he would be subject to those terms as a third-party beneficiary. *See James v. Glob. TelLink Corp*, 852 F.3d 262, 267–68 (3d Cir. 2017) (publication of terms of use on website is not alone sufficient to bind). As the photographers argue, there is "no evidence these Terms & Conditions or the FSC therein were ever 'reasonably communicated' or otherwise made known to Kashi. Although Kashi received royalty statements from Corbis that provided limited information, Kashi did not receive copies of the Invoices that Corbis issued to MHE." Kashi Resp. 7.

A foreseeability finding in the context of forum selection clauses must have some evidentiary basis, other than pure speculation, that the party sought to be bound had an awareness of the clause, its contents, and that it might be defensively invoked. Krist argues for a higher bar. He argues that foreseeability requires a finding that the clause and its contents had been "reasonably communicated" to the party against whom enforcement is sought. Krist Pet'r 19 (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)). But our case law, notably *Coastal Steel*, did not set such a high bar, and we decline to raise that bar today. What *Coastal Steel* does require is that the *actual forum* be foreseeable, and that there be some evidentiary basis for such a finding.

In light of this standard, we conclude that Judge Davis' foreseeability finding was insufficient. The online Terms and Conditions cannot suffice, and Judge Davis made no finding as to the foreseeability of a *specific* forum. Yet we cannot say, on the record before us, that this error was so clear as to warrant mandamus. Indeed, there was other evidence in the record on which Judge Davis could have relied to bolster his foreseeability finding: namely the exemplar representation agreements. Krist has not refuted—and Kashi has conceded—that the photographers' representation agreements with Corbis contained a forum selection clause that specified New York, New York. Oral Arg. 30:38–31:15, 48:21–49:08; Kashi Resp. 39–40 (conceding that Kashi's representation

37

agreement contained a New York forum selection clause). At the very least, these clauses provide evidentiary support for a finding that enforcement of a *New York, New York* forum selection clause was foreseeable—the photographers were aware that Corbis preferred that forum. Because he had this evidence before him, Judge Davis' finding was not clear and indisputable error.

## C. Do the copyright claims fall within the scope of the Corbis FSC?

Judge Davis held that the copyright claims depend upon the licenses because *unauthorized* use is part of the plaintiff's *prima facie* case in the copyright context. The Second Circuit employs this approach when only the *scope* of the license is at issue. *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995). In other words, where the plaintiff concedes the existence of a license, the burden may fall on the plaintiff, in the first instance, to demonstrate that the scope was exceeded. We have yet to consider that doctrine and have no cause to consider it today. Indeed, the plaintiffs doggedly refuse to concede the existence of licenses, even when pressed at oral argument. Oral Arg. 27:36–29:30. But that refusal to concede is not the reason we decline to adopt the *Bourne* rule. Rather, we recognize that on the facts of the cases before us, we could not hold plaintiffs to such a *prima facie* burden.

The licenses obtained by McGraw-Hill were not granted by the photographers directly but by Corbis as a sub-licensor. And the royalty statements received by the photographers lacked specific detail as to the scope of each license granted. Kashi Resp. 7, 37 (citing Kashi Supp. App'x 1). As such, it stands to reason that the photographers may not be aware of each license issued, or the scope of each license. Because they were not themselves directly privy to those licenses, we cannot expect them to plead unauthorized use as part of a *prima facie* case. As the Seventh Circuit recognized when considering this very issue, "'proving a negative is a challenge in any context,' and if there is evidence of a license, it is most likely to be in the possession of the purported licensee." *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 761 (7th Cir. 2016) (quoting *Vieth v. Jubelirer*, 541 U.S. 267, 311 (2004)).

The Seventh Circuit took the opportunity in *Muhammad-Ali* to clarify the elements of a *prima facie* claim for copyright infringement. We do the same here. Both McGraw-Hill's arguments and Judge Davis' opinion cite to *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197 (3d Cir. 2002), for the elements of a copyright infringement claim. According to that precedential opinion: "To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Id.*

39

at 206. As an initial matter, that statement appears to be dictum—it is a proposition not essential to the determination of the case. Further, *Dun & Bradstreet*'s inclusion of "unauthorized" as part of the second element appears to be an error. The precedent *Dun & Bradstreet* cites as support of the listed elements, *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986), and *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 831 (10th Cir. 1993), do not include the term "unauthorized" in their listing of the second element. Nor has the Supreme Court held that *unauthorized* copying is the second element of a copyright claim. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."). We can only conclude that use of the word "unauthorized" was erroneous. Because *Whelan* predated *Dun & Bradstreet*, its explication of the elements controls. The traditions of this Court dictate that a panel decision may not overrule the holding of a previous panel. *Reilly v. City of Harrisburg*, 858 F.3d 173, 177 (3d Cir. 2017), *as amended* (June 26, 2017) (citing Internal Operating Procedures of the Third Circuit Court of Appeals § 9.1); *United States v. Monaco*, 23 F.3d 793, 803 (3d Cir. 1994) (same).

Having determined that the license is not part of the photographers' *prima facie* case, we turn to the text of the

forum selection clause. We interpret a forum selection clause in accordance with its plain meaning. *See Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 99 (3d Cir. 2018) (citing *Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011); *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 243 (3d Cir. 2008); Restatement (Second) of Contracts § 202 (1981)). The clause in the Corbis agreements reads:

> Any dispute regarding this Agreement shall be governed by the laws of the State of New York, and by Titles 15, 17 and 35 of the U.S.C., as amended, and the parties agree to accept the exclusive jurisdiction of the state and federal courts located in New York, New York, regardless of conflicts of laws.

MHE App'x 284 (2014 PPA). Of immediate significance is use of the noun "dispute," which is used as opposed to, for example, "claim." Under *Wyeth*, this Court construes the word "dispute" as being broader than "claim." 119 F.3d at 1074. The Seventh Circuit has held likewise, explaining that "the forum selection clause does not apply just to the litigation of *claims* that arise out of, concern, etc., the contract; it applies to the litigation of *disputes* that arise out of, concern, etc., the contract." *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 424 (7th Cir. 2007). The Second Circuit disagrees. In *Phillips*, 494 F.3d at 391, the forum selection clause applied not just to "claims" but

41

to "proceedings." But the Court held that "reference to proceedings" did not require it "to take into consideration the source of rights or duties asserted on *defense*." *Id.* Unlike the Second Circuit, we hold that the word "disputes" allows the contract to be implicated by way of an affirmative defense.

But we must also consider the second word: the preposition "regarding." In *Wyeth* the forum selection clause applied to "any dispute arising under or out of or in relation to this Agreement." 119 F.3d at 1072. The Court noted that "arising in relation to" is broader than "arising under." *Id.* at 1075. It explained:

> The ordinary meaning of the phrase "arising in relation to" is simple. To say that a dispute "arise[s] . . . in relation to" the 1990 Agreement is to say that the origin of the dispute is related to that agreement, *i.e.*, that the origin of the dispute has some "logical or causal connection" to the 1990 Agreement. *Webster's Third New International Dictionary*, 1916 (1971).

*Wyeth*, 119 F.3d at 1074. *See also Flanagan v. Prudential-Bache Sec., Inc.*, 495 N.E. 2d 345, 350 (N.Y. 1986) (holding that "respecting," which is defined as "'with regard or relation to: regarding, concerning,'" has a broader connotation than "arising out of") (quoting Webster's Third New International Dictionary, at 1934).

42

Second, the preposition "regarding" is used rather than the phrase "arising under," "arising out of," or "arising in relation to." The ordinary meaning of "regarding" mirrors the latter, or "in relation to." "Regarding" is defined as "[i]n reference or relation to; about, concerning." Oxford English Dictionary ("OED"), Third Edition, December 2009; *i.e.*, "with respect to; concerning." Merriam-Webster's Collegiate Dictionary, 11th ed. The preposition "concerning" is likewise defined as "[a]s regards; as relates to." OED, Third Edition, September 2015.

"Regarding" may thus be equated with "relates to," a phrase *Wyeth* defines as having some "logical or causal connection." 119 F.3d at 1074. Here, the disputes have a logical or causal connection to the agreements, at least for the majority of the claims. As Krist's Complaint suggests, McGraw-Hill obtained access to the photographs through its licensure agreements with Corbis. Krist App'x 6 (Krist Complaint ¶ 10). Those licenses were for limited use, yet McGraw-Hill "print[ed] or distribut[ed] more copies of the [p]hotographs than authorized." *Id*. at 7 (Krist Complaint ¶¶ 11–13). Kashi's Complaint makes the same allegations. MHE App'x 164–65 (Kashi Complaint ¶¶ 9–12). These allegations establish a logical and causal connection between the Corbis–McGraw-Hill agreements and the copyright infringement actions. It may be said that the "dispute" here is whether McGraw-Hill violated the

43

plaintiffs' copyrights by exceeding the scope of its licenses.

As an additional point, the forum selection clause specifies the federal copyright statutes as a source of law: "Any dispute regarding this Agreement shall be governed by the laws of the State of New York, *and by Titles 15, 17 and 35 of the U.S.C., as amended . . . .*" MHE App'x 284 (emphasis added). The reference to copyright law suggests that the clause was intended to encompass such disputes. *See, e.g., Lefkowitz v. John Wiley & Sons, Inc.*, No. 13-cv-1662, 2013 WL 4079923, at *1 (E.D. Pa. Aug. 13, 2013) (Baylson, J.) ("[T]he forum selection clause specifically envisions that 'any dispute regarding this Agreement' includes copyright infringement claims because the clause expressly states that disputes shall be governed by, inter alia, Title 17 of the United States Code (i.e., the title of the Code that governs copyright claims).").

Based on this Court's precedent, which the parties cite for interpretation of the clause, we hold that the photographers' copyright actions are "disputes regarding" the Corbis–McGraw-Hill agreements because the face of the complaints contemplate that licenses existed, and the language of the forum selection clause is broad enough to encompass actions in which the agreements are raised as an affirmative defense. *See* MHE App'x 164 (Complaint ¶¶ 8–9) (reference to invoices issued by Corbis); Krist App'x 6 (Complaint ¶ 10) (same).

44

We also note our case law which suggests that to bind non-signatories to a forum selection clause, the claim must arise in relation to the contract. *DuPont*, 269 F.3d at 197–98. Given the unique nature of copyright claims, we recognize that we should not permit a party to avoid a forum selection clause simply by pleading non-contract claims. *See Coastal Steel*, 709 F.2d at 203 ("[W]here the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain."); *Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944–45 (3d Cir. 1988) (same). So where the copyright holder is an intended third-party beneficiary or closely related party *and* the natural language of the forum selection clause is broad enough to cover a copyright claim, we would ordinarily bind the non-signatory.

In conclusion, Judge Davis reached the correct result about the scope of the forum selection clause, but did so, in part, for the wrong reason. Because of the mistaken placement of a word in *Dun & Bradstreet*, Judge Davis was incorrect in reasoning that a copyright claim "depends on" the agreements by virtue of the pleading standard. However, Judge Davis was correct in concluding that the text of the forum selection clause is broad enough to encompass actions pleaded only under the Copyright Act. That conclusion would be consequential if the photographers were signatories to the Corbis forum selection clause, were intended third-party beneficiaries,

45

or were closely related parties. But because the photographers are none of those things, the scope of the forum selection clause is of little consequence.[8] Indeed, the only consequence for our purposes is to determine that Judge Davis' conclusion regarding the *scope* of the forum selection clause is not a basis for granting mandamus relief.

## D. The reach of *Atlantic Marine*

The final doctrinal question raised by these actions is distinct. Apart from his determinations regarding the applicability of the forum selection clause, did Judge Davis err in conducting his § 1404(a) transfer analysis?[9] Krist argues that Judge Davis so erred by applying *Atlantic Marine* and that our *Howmedica* decision required him to consider Krist's choice of forum and private interests. We

---

[8] Judge Beetlestone incorrectly concluded that Kashi's copyright claims fell outside the scope of the forum selection clause. MHE App'x 4–6. But Judge Beetlestone's ultimate conclusion—that the clause was not enforceable against Kashi—was correct.

[9] Judge Beetlestone undertook a traditional § 1404(a) analysis and found that transfer was not justified. MHE App'x 4–6. McGraw-Hill does not argue that the judge's traditional § 1404(a) analysis was faulty, and thus we need not evaluate it.

conclude that no such error occurred and *Howmedica* did not so require.

As discussed in Section II.C., *Atlantic Marine* modified the traditional § 1404(a) balancing test in scenarios where a forum selection clause binds all parties. The Court collapsed the § 1404(a) analysis into consideration of one factor: the public interest. 571 U.S. at 64.

The parties in *Atlantic Marine* were all signatories to the agreement and thus bound by the forum selection clause. We now consider whether *Atlantic Marine* applies to a case in which one party is a contracting party and the other, though not a signatory, is nevertheless bound by a forum selection clause as an intended third-party beneficiary or closely related party.

Krist argues that our *Howmedica* decision controls the result. In *Howmedica*, we addressed a situation in which signatory plaintiffs sought to bind non-signatory defendants to a forum selection clause as closely related parties, but we rejected their contention that the closely related parties doctrine applied. *See* 867 F.3d at 407 & n.13. Having determined those non-signatories were *not bound* by the clause, we concluded they were properly treated as "non-contracting parties" and we announced an analytical framework to determine how forum selection clauses affect the § 1404(a) transfer analysis where the case involves both "contracting parties," i.e., those bound

47

by a forum selection clause and thus subject to the presumption of *Atlantic Marine*, and "non-contracting parties," i.e., those not bound by a forum selection clause and whose private interests therefore must still be considered. *See* 867 F.3d at 403–07. In that situation, we held, a court could not take an "all or nothing" approach in applying *Atlantic Marine*. *Id.* at 406. If some parties are not bound by a forum selection clause, a court must consider those parties' private interests under *Howmedica*'s analytical framework. *Id.* at 403–04.

Kashi and Krist read *Howmedica* as adopting a "bright-line" rule: *Atlantic Marine* applies only to *signatory* parties. Kashi Resp. 30; Krist Pet'r 12. Under their reading, *even if* they are bound by the forum selection clause, their private interests must be considered on a § 1404(a) motion. In other words, they ask us to hold that the *Atlantic Marine* modification applies only when all parties *signed* the contract—it does not apply when non-signatories, regardless of their status as third-party beneficiaries or as closely related parties, are present in the action. *Howmedica* did not go so far, and we reject their request.

This argument is most easily analyzed through use of a counterfactual. Suppose a non-signatory intended third-party beneficiary brings a breach of contract claim, as would be his right under traditional principles of contract law. Despite his non-signatory status, he is fully aware of the contract and its terms. Indeed, he expressly

48

bases his claim on the terms of the contract. The contract also contains a forum selection clause, and his breach of contract claim falls within the scope of that clause. As such, there is no question that the non-signatory is bound by the forum selection clause. Despite being bound by that clause, the plaintiff files his breach of contract suit in a jurisdiction other than the one specified in the clause. The signatory defendant invokes the forum selection clause and moves to transfer venue under § 1404(a). In this case, must the district court consider the non-signatory plaintiff's choice of forum and private interests? Or does the court consider only the public interest factors, per *Atlantic Marine*?

The latter must be true. Such an eyes-wide-open plaintiff—one who gets the benefit of the parties' bargain and has the corresponding right to sue—would be bound by the terms of the forum selection clause just as the signatories would be.

The facts before us are different, but the underlying principle is the same. The *Atlantic Marine* modification applies to the § 1404(a) transfer inquiry if: (1) a non-signatory is bound by a forum selection clause under traditional contract law principles; (2) enforcement of the clause against him was foreseeable; and (3) his claim falls within the scope of the clause. Indeed, *Atlantic Marine* recognized that foreseeability offsets "[w]hatever 'inconvenience' [a party] would suffer by being forced to litigate in the contractual forum." 571 U.S. at 64 (quoting

49

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17–18 (1972)).[10]

## IV. Conclusion

These petitions raise complicated issues concerning forum selection clauses. We conclude that the District Court in *Kashi* reached the correct result in declining to transfer the action. We conclude that the District Court in *Krist* erred in transferring the action, but the error was not clear and indisputable. As such, we decline to issue a writ of mandamus in either case.

---

[10] McGraw-Hill does not argue that transfer would be warranted in the *Krist* action under a traditional § 1404(a) analysis, and we see no reason why the balancing conducted by Judge Beetlestone in *Kashi* would produce a different result in the *Krist* action. In fact, given Krist's place of residence, the private interest factors in *Krist* slightly favor the Philadelphia forum.

ROTH, Circuit Judge, *Dissenting in Part and Concurring in Part*

Kashi and Krist came to court with exactly the same claim against McGraw-Hill; their license agreements with Corbis were identical; they both defended against identical McGraw-Hill motions to transfer; and they even had the same lawyer. Yet, the District Courts came to opposite conclusions—the *Kashi* court denied McGraw-Hill's transfer motion and the *Krist* court granted it. Now, on petitions for mandamus, the two cases have been consolidated. Even though the majority finds that the *Krist* court erred in transferring the case, it fails to correct the error and leaves opposing District Court decisions untouched. The majority prioritizes adherence to the strict standards of mandamus relief over judicial consistency and equal treatment of the parties. I do not.

The majority concludes that even though the District Court in *Krist* should not have granted McGraw-Hill's motion to transfer, mandamus is not warranted. Specifically, in Krist's case, it holds that the judge's error in transferring the action was not "a clear and indisputable abuse of discretion or . . . error of law," and even if it was, there is no basis for exercising our discretion to grant the writ.[1] It emphasizes the incredibly high bar petitioners must meet in order to receive mandamus relief and tells us that even if petitioners do meet the bar, the court can still deny mandamus.[2] However, the majority fails

[1] Majority at 31-34.

[2] Majority at 13-15; 31-34.

1

to grapple with the fact that its decision permits the incongruous and unfair treatment of essentially indistinguishable litigants. Krist is left in the dust of this decision, correct on the law but without his remedy.

Leaving undisturbed contradictory decisions in these two identical and consolidated cases promotes judicial inconsistency. Litigants—and the public at large—expect courts to come to the same conclusion when presented with the same claims and facts. Allowing opposite results in two consolidated cases with the same legal issues and the same factual background—even when done in the name of adherence to the strict standards of mandamus relief—erodes the integrity of and the public trust in the courts.[3] Indeed, in other contexts, federal courts have corrected contradictory, yet factually analogous, lower court decisions in the name of judicial consistency.[4]

---

[3]We have already recognized the importance of judicial consistency to the integrity of courts in the context of judicial estoppel. This doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227, n.8 (2000)). Because this rule prevents the "risk of inconsistent court determinations" it "protect[s] the essential integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

[4] *See, e.g.*, *Diamond Shamrock Expl. Co. v. Hodel*, 853 F.2d 1159, 1168 (5th Cir. 1988) (reversing decision of one district court to align with decision of another in a consolidated appeal "in the interest[] of consistency"); *Dallas Ceramic Co. v.*

In addition to promoting inconsistency, the majority's decision violates basic principles of fairness. While Kashi pursues his case in the forum he originally chose, Krist is forced to litigate in a forum of the defendant's choosing. Litigants should come to our courts knowing that the merits of their claims and defenses will determine the outcome of their cases—not the judge randomly selected to be on the case. Instead, the majority tells Krist that his judge made the wrong decision but that he cannot have the same remedy as Kashi. This result is unfair.

Therefore, I propose a modified mandamus standard when considering whether to grant a writ in consolidated petitions. First, we should consider whether denying mandamus would create an inconsistent result or unequal application of law. If so, the petitioner need not show "a *clear* abuse of discretion or *clear* error of law."[5] Rather, it is sufficient for the petitioner to show simply reversible error. In other words, the first factor in the three-factor test for granting

---

*United States*, 598 F.2d 1382, 1391 (5th Cir. 1979) (reversing district court decision to align with factually and legally analogous Tax Court decision because our "sense of judicial consistency dictates that these two cases should come out the same"); *In re Cole*, 114 B.R. 278, 279, 286 (N.D. Okla. 1990) (correcting conflicting rulings by two bankruptcy court judges where the "fact pattern in all of the[] proceedings [was] virtually identical").

[5] Majority at 13 (quoting *United States v. Wright*, 776 F.3d 134, 146 (3d Cir. 2015)) (emphasis added).

3

mandamus relief [6] would not be such a "high bar"[7] in a consolidated petition like this one. If we were to apply this modified standard here, because "the District Court in *Krist* erred in its conclusion . . . and in transferring his case,"[8] the *Krist* court committed reversible error. Krist met the modified standard for factor one. We would then grant Krist's writ.[9]

As the majority reminds us, relief via a writ of mandamus is extraordinary and judges should "proceed both carefully and courageously in exercising their discretion" to grant a writ.[10] There are good reasons why mandamus relief is rare and difficult to achieve. Such relief disrupts a case's "flow through the judicial system" and "is contrary to the common law policy of avoiding piecemeal appellate review of cases."[11] If every potentially erroneous decision could be resolved on a writ of mandamus, our appellate courts would be overwhelmed and litigants would await final resolution of their cases far longer than they already do.[12]

---

[6] The three factors are set forth on page 13 of the majority opinion and include: "(1) a clear abuse of discretion or clear error of law; (2) a lack of an alternate avenue for adequate relief; and (3) a likelihood of irreparable injury."

[7] Majority at 14.

[8] Majority at 31.

[9] The other two factors are met here. *See* Majority at 14 ("[T]ransfer orders as a class meet the second and third requirements.").

[10] Majority at 15 (quoting *Lusardi v. Lechner*, 855 F.2d 1062, 1070 (3d Cir. 1988)).

[11] *Lusardi*, 855 F.2d at 1069.

[12] *See In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015) ("[M]andamus must not become a means by

4

However, these concerns are minimized here due to the limited application of this proposed modification. The lower standard for factor one of the mandamus test would only apply to (1) consolidated petitions for mandamus; (2) where the district courts had come to opposite decisions on substantially similar facts; and (3) where denying mandamus would create incompatible results and/or an unequal application of law. Such cases are extremely rare. This narrow exception makes room in our mandamus jurisprudence for judicial consistency and equal administration of justice without risking significant disruptions in litigation or increases in burdensome piecemeal litigation.

For these reasons, I respectfully dissent from the majority's decision to deny mandamus in *Krist*, and concur with the ruling that mandamus is not warranted in *Kashi*.

---

which the court corrects all potentially erroneous orders.") (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008)); *see also* Majority at 14-15.