# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 28, 2022

Lyle W. Cayce
Clerk

No. 21-20316

Franlink Incorporated, *a Texas Corporation*,

*Plaintiff—Appellee*,

*versus*

BACE Services, Incorporated, *a Florida Corporation*, *formerly known as* Craig Wells Enterprises, Incorporated; Steven Bradley Morton, *a Florida Resident*; Payday Solutions, L.L.C., *a Florida Limited Liability Company*; JTL Staffing; Payroll, L.L.C., *an Alabama Limited Liability Company*,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-4593

Before Jolly, Smith, and Engelhardt, *Circuit Judges*.

E. Grady Jolly, *Circuit Judge*:

This case presents one primary question: whether non-signatories to a franchise agreement may be bound to the contract's choice of forum provision under the equitable doctrine that binds non-signatories who are "closely related" to the contract. We conclude such non-signatories may be bound to a forum selection clause, as we will more fully set out below.

No. 21-20316

Applying the doctrine here, we affirm as to non-signatory PayDay, but reverse as to non-signatories JTL and Morton.

The other issues on appeal pertain to damages, attorneys' fees, and costs. After this appeal, these awards only apply to the remaining defendants—the signatory, BACE, and the non-signatory, PayDay. With respect to these remaining defendant-appellants, we reverse and remand the money judgment to allow the district court to reconsider damages, attorneys' fees, and costs in the light of this opinion. The imposed injunction, however, is affirmed and remains unaffected as to BACE and PayDay.

We thus AFFIRM in part; REVERSE in part; VACATE in part; and REMAND.

I.

Amy and Craig Wells entered into a franchise agreement with Franlink Incorporated ("Link") in 2007, which they renewed in 2017, allowing the Wellses to operate a franchise staffing company, BACE Services ("BACE"), in Jacksonville, Florida. The franchise agreement created a fee-sharing arrangement and authorized BACE to use Link's trademarks and name. It specified several acceptable reasons for terminating the franchise and outlined post-termination obligations. The agreement also included a covenant not to compete and a non-solicitation provision that applied to BACE, Craig Wells, and Amy Wells (collectively, "BACE defendants" or "signatories").

By November 2018, BACE had become unhappy with the franchise arrangement and, according to the district court, "beg[a]n to explore options for exiting the Link Staffing system." A ransomware attack in October 2019 on Link's system seemed to provide a reason, and BACE purported to

2

No. 21-20316

terminate its agreement with Link on October 25, 2019.[1] Earlier, on October 21, 2019, Bradley Morton—Amy Wells' son and Craig Wells' stepson, who had been a manager at BACE but not a signatory to the franchise agreement—had left BACE to become a branch manager at JTL, a competing staffing business that operates in the same territory as the BACE franchise. JTL is owned and operated by a non-party in this case. Still, Craig Wells began soliciting Link's former BACE clients to JTL on October 30, 2019.

Link soon learned of the activities involving JTL. Further, Link learned that Craig and Amy Wells were also operating another competing staffing company, PayDay, and were diverting and soliciting former Link clients to it. Such conduct led Link to formally terminate the franchise agreement on November 6, 2019. Additionally, on November 14, 2019, Link sent a cease and desist letter to JTL, which informed JTL of the BACE franchise agreement. JTL refused to comply with the cease and desist demand, saying it was not a signatory to the agreement.

On November 22, 2019, Link filed a complaint in the Southern District of Texas based on the forum selection provision of the franchise agreement.[2] It named BACE, Craig and Amy Wells, Morton, JTL, and

---

[1] The district court later held that the ransomware attack was not a valid reason under the agreement to terminate the franchise.

[2] The forum selection clause stated, in bolded, all capital letters, that:

Franchisee and its owners agree that Link may institute any action against Franchisee or its owners in any state or federal court of general jurisdiction in (a) the State of Texas, or (b) in the state where Franchisee has its principal place of business, or (c) within such state and in the judicial district in which Link has its principal place of business at the time the action is commenced, and Franchisee (and each owner) irrevocably submits to the jurisdiction of such courts and waives any objection Franchisee (or such owner) may have to either jurisdiction or venue

No. 21-20316

PayDay—all non-Texas residents—as defendants. Link sought injunctive relief and damages for the breach of contract, trademark infringement, unfair competition, tortious interference, and civil conspiracy. The non-signatories to the franchise agreement (Morton, JTL, and PayDay) filed a motion to dismiss for lack of personal jurisdiction, arguing the agreement's forum selection clause did not apply to them; and that without the forum selection clause, the district court lacked jurisdiction over these out-of-state residents. The district court denied their motion. In doing so, the district court held that the agreement's forum selection clause applied to the non-signatories because they were "so closely related" to the signatories that it was "foreseeable" they would be bound to the forum-selection clause.

The district court conducted a four-day bench trial in August 2020 and thereafter issued its findings of fact and conclusions of law. The district court granted each of Link's claims against the defendants and denied all the defendants' counterclaims.

Specifically, the district court concluded that "Craig Wells, Amy Pope-Wells, and Morton operated their former Link Staffing Franchised Business and PayDay interchangeably, using the same employees, email addresses, and field staff while servicing the same customers. Additionally, they continue to operate PayDay interchangeably with JTL." The district court cited evidence that Morton started working for JTL after having left his position at BACE, and that Morton had numerous correspondences with former BACE clients telling them that JTL was a "continuation" of BACE's

---

in such courts. Nonetheless, Franchisee and its owners agree that Link may enforce this agreement in the courts of the State of Texas.

Following these lines, the clause returned to standard typeface and stated that "FRANCHISEE acknowledges and agrees that this Section shall survive the termination or expiration of this Agreement."

Link franchise and that BACE would be doing business as JTL henceforth. The district court further concluded that JTL was a "mere continuation" of BACE's former Link franchise, and that it had conspired with BACE to operate a competing staffing company. Finally, the district court found that Craig and Amy Wells owned PayDay, a competing staffing company, which they had used to divert Link's former BACE clients and to compete with Link in the Jacksonville area.

At the conclusion of the four-day bench trial, the district court awarded Link $378,562.22 in damages for the losses suffered from the defendants' breach of the contract. It also granted injunctive relief enforcing the non-compete and non-solicitation provisions. Link then moved for attorneys' fees under the contract and the Lanham Act. The non-signatories again objected that the contractual attorneys' fees provision did not apply to them because they were not parties to the agreement. The district court nevertheless awarded attorneys' fees under the contract of $731,295.30 and costs of $113,484.04 and made all the defendants liable for the attorneys' fees. The defendants unsuccessfully moved under Fed. R. Civ. P. 52(b) and 59(e) to alter or amend the judgment relating to the fees, costs, and expenses granted to Link, and then filed a notice of appeal.[3]

On appeal, the non-signatories challenge the district court's findings relating to personal jurisdiction, bifurcating the trial, and attorneys' fees. They argue that, as non-signatories, they are not bound to the contract's forum selection clause, jury trial waiver, and attorneys' fees provision. All defendants also assert that the district court erred in calculating the damages

---

[3] After the notice of appeal was filed, Craig and Amy Wells filed for individual bankruptcy and settled their appealable issues in that proceeding. They thus have been dismissed from this appeal and the only remaining defendants before the court are BACE and the non-signatories, Morton, JTL, and PayDay.

owed, imposing both injunctive relief and future damages, and in calculating attorneys' fees. We proceed by first addressing the standard of review and then the closely-related doctrine.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*." *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015). A trial judge's finding is only clearly erroneous if, after reviewing the entire record, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

Matters of contract interpretation are reviewed *de novo. Ergon-W. Virginia, Inc. v. Dynegy Mktg. & Trade*, 706 F.3d 419, 424 (5th Cir. 2013). As are questions about personal jurisdiction and a party's entitlement to a jury trial. *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 295 (5th Cir. 2020) (personal jurisdiction); *U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 416 (5th Cir. 2014) (jury trial). However, "[a]s for whether the district court properly refused to equitably enforce a contract, we review that for abuse of discretion." *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022)

This court reviews a district court's ruling on a Fed. R. Civ. P. 52(b) or 59(e) motion for abuse of discretion as well. *United States v. Texas*, 601 F.3d 354, 362 (5th Cir. 2010). "Under this standard, the district court's decision and decision-making process need only be reasonable." *Midland W. Corp. v. FDIC*, 911 F.2d 1141, 1145 (5th Cir. 1990) "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Fornesa v. Fifth Third Mortg. Co.*, 897 F.3d 624, 627 (5th Cir. 2018).

No. 21-20316

### III.

As noted, the principal question on appeal is whether the non-signatory defendants—Morton, JTL, and PayDay—can be bound, under the closely-related doctrine, to the forum selection clause in the franchise agreement between the BACE defendants and Link.[4] We focus on the forum selection clause because it determines whether personal jurisdiction exists.[5]

The district court held that, under the closely-related doctrine, the non-signatories were "inextricably intertwined and closely related such that it is foreseeable they would be bound to the terms of the forum-selection clause." This "closely-related" doctrine has "permitted non–signatories to an agreement to be bound by, and to enforce, forum selection clauses where, under the circumstances, the non–signatories enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound." *Fasano v. Li*, No. 20-3131, 2022 WL 3692850, at *11

---

[4] Link argues that the defendants' notice of appeal (NOA) is defective in raising the personal jurisdiction and jury trial issues. Link correctly notes that the defendants' NOA only designates (1) the district court's findings of fact and conclusions of law, (2) the September 24, 2020, order and the final judgment, and (3) the order denying the Rule 52(b) and Rule 59(e) motions, and that none of these rulings raise the personal jurisdiction or jury trial issues. This court "liberally construe[s]" notices of appeal, however. *Williams v. Henagan*, 595 F.3d 610, 616 (5th Cir. 2010). The defendants here clearly and early raised personal jurisdiction as a critical issue in a motion to dismiss. The district court denied the motion, asserting the closely-related doctrine—the primary issue in this appeal. Because defendants appeal the final judgment in this case, the order exercising personal jurisdiction over defendants is contrarily "intertwined" with the final judgment. *Tr. Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1485 (5th Cir. 1997). Defendants, moreover, again raised the issue of whether the non-signatories can be bound to the franchise agreement in their Rule 52(b) and 59(e) motions (the basis for the final judgment) in reference to the attorneys' fees provision and in their opening brief in this court in reference to all provisions at issue. Thus, the defendants showed an intent to appeal these issues and the jurisdictional issues are plainly before us. *See Cantu v. Jackson Nat. Life Ins. Co.*, 579 F.3d 434, 436 (5th Cir. 2009).

[5] Link asserts two other arguments for personal jurisdiction over the non-signatory defendants that we reject as meritless. *See infra* note 8.

(2d Cir. Aug. 26, 2022); *see also Stellar Restoration Servs. v. Courtney*, 533 F. Supp. 3d 394, 424 (E.D. Tex. 2021) (stating that the closely-related doctrine may also be established if the non-signatory's conduct is "'closely related' to the contractual relationship").

Our court has never recognized the closely-related doctrine. All other circuit courts to have considered the doctrine, however, have recognized it in one way or another. *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 63 (3d Cir. 2018); *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013); *Marano*, 254 F.3d at 757–58 (8th Cir.); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998); *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209–10 (7th Cir. 1993); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). Link asks us to join these circuits.

A.

Although most circuits have adopted the closely-related doctrine, they have usually done so without in-depth explanation of the theory. *See, e.g.*, *Marano*, 254 F.3d at 757–58 (finding a plaintiff closely related when he was "a shareholder, officer, and director" of a signatory); *Hugel*, 999 F.2d at 209–10 (concluding that two plaintiffs were closely related because a signatory was "President and Chairman of the Board" of the plaintiffs and owned almost all of the plaintiffs' stock); *Manetti-Farrow*, 858 F.2d at 514 n. 5 (writing, in three-sentence footnote, that multiple defendants were closely related). The Seventh and the Third Circuits, however, have made an effort to more fully explain the doctrine and to indicate its proper employment.

The Seventh Circuit addressed the closely-related theory in *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436 (7th Cir. 2012) (Posner, J.). The court gave three reasons why allowing closely-related non-signatories to

invoke a forum selection clause is an appropriate equitable theory. First, without such a principle, forum selection clauses could "easily be evaded." *Id.* at 441; *see also Fitness Together Franchise, LLC v. EM Fitness, LLC*, No. 1:20-cv-02757-DDD-STV, 2020 WL 6119470, at *4 (D. Colo. Oct. 16, 2020) (describing a benefit of the theory as preventing "parties to contracts from using evasive, formalistic means lacking economic substance to escape contractual obligations" (citations and quotations omitted)). Second, forbidding non-signatories to invoke, or to be bound, to these clauses would "undermine the contribution that [forum selection] clauses have been praised for"—providing "certainty in commercial transactions." *Adams*, 702 F.3d at 441. Finally, judicial efficiency counsels to recognize the theory as litigating the same case in one court is preferable to litigating the same case in two different courts. *Id.* at 443. The Seventh Circuit, after noting these equitable justifications for the closely-related doctrine, moved on to give some shape to the doctrine.

The Seventh Circuit, in its words, "decomposed" the closely-related doctrine's admittedly "vague standard" "into two reasonably precise principles"—affiliation and mutuality. *Id.* at 439. The court defined affiliation as "common ownership." *Id.* It noted, however, that common ownership alone is insufficient for "a nonparty to a contract to be able to invoke, or be bound by, a clause in [the contract]." *Id.* at 440. In defining the principal of mutuality, the court relied on the agency concept of "secret principals." *Id.* at 442.

The Third Circuit, on the other hand, basically adopts the Delaware Chancery Court's factors for determining whether a non-signatory is so

No. 21-20316

"closely related" as to be bound to a contract's forum selection clause.[6] *McGraw-Hill*, 909 F.3d at 62–63. These factors include: "[T]he non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *Id.* at 63 (determining that without control or involvement in the contract's origin or benefits there is "precious little basis for applying the closely related parties doctrine"). Additionally, the Third Circuit concluded that "a foreseeability finding in the context of forum selection clauses must have *some evidentiary basis*, other than pure speculation, that the party sought to be bound had an *awareness of the clause, its contents, and that it might be defensively invoked*." *Id*. at 65 (emphasis added).

In sum, the Seventh and Third Circuits, in giving some structure to the closely-related doctrine's "vague standard," have considered: common ownership, involvement in the agreement's negotiations, signatory status of the party opposing the forum selection clause, the type of claims and allegations at issue, control by secret principals, the posture of the case, direct benefits received, and awareness of the agreement and its relevant terms. Other circuits in their brief assessments have considered similar factors. *See, e.g.*, *Magi*, 714 F.3d at 723 (holding that a party was closely related on account of approval rights over the contractual content, awareness of the designated forum, and involvement in breach of contract); *Marano*, 254 F.3d at 757–58 (finding a plaintiff to be closely related because (1) he was "a shareholder, officer, and director" of a signatory, and (2) he brought suit under the

---

[6] The Third Circuit did not specifically acknowledge that these factors come from the Delaware Chancery Court, but instead cited another Third Circuit decision, *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015), which clearly applied Delaware law and the Delaware Chancery Court's factors.

No. 21-20316

agreements in question alongside other signatories); *Hugel*, 999 F.2d at 210 (emphasizing a signatory's control over two plaintiffs both financially, through stock ownership, and by being "President and Chairman of the Board" when assessing if the two plaintiffs were closely related). It does appear that the various factors relevant in these respective cases have been considered holistically with no particular test emerging as definitive.

B.

Notwithstanding its recognition by federal courts, however, the closely-related theory is not without its critics. Unlike the Seventh and Third Circuits, most courts have, as we have said, applied the theory with little discussion or analysis. Such treatment has led some lower courts to criticize the theory as "so vague as to be unworkable." *Fitness Together Franchise*, 2020 WL 6119470, at *5 (quoting *Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 556 (N.D. Tex. 2009)); *see also Dos Santos*, 651 F. Supp. 2d at 557 (commenting that the doctrine resides in "an area of the law dominated by generalized statements that provide little guidance"). Such vagueness, moreover, has been particularly troubling given its "tension with the Supreme Court's approach in the related minimum-contacts context." *Fitness Together Franchise*, 2020 WL 6119470, at *5.

Legal academics have also raised concerns with the "closely-related" doctrine. The absence of the non-signatory's consent presents a due process problem by forcing a party to litigate in a forum that would otherwise lack personal jurisdiction. John F. Coyle & Robin J. Effron, *Forum Selection Clauses, Non-Signatories, and Personal Jurisdiction*, 97 NOTRE DAME L. REV. 187, 213 (2021) ("[T]he closely-related-and-foreseeable test to assert personal jurisdiction over non-signatory defendants is impossible to reconcile with recent Supreme Court precedents relating to personal jurisdiction with respect to out-of-state-defendants."). As an alternative to the closely-related

doctrine, these professors suggest that "[w]here the 'close relationship' is one in which the non-signatory is working functions more or less as a unit with the signatory, the relationship should be expressed and analyzed using the more familiar tools of agency, third-party beneficiary law, and equitable estoppel." *Id.* at 224.

## C.

Although there is good reason to be dubious of the doctrine, the fact that it has been recognized by all other circuits to have considered it, invokes a strong reason for us to apply it in this circuit. We, as a court, "are always chary to create a circuit split[.]" *Gahagan v. United States Citizenship & Immigr. Servs.*, 911 F.3d 298, 304 (5th Cir. 2018) (quoting *United States v. Graves*, 908 F.3d 137, 142 (5th Cir. 2018)); *see also United States v. Thomas*, 939 F.3d 1121, 1130 (10th Cir. 2019) ("We should not create a circuit split merely because we think the contrary arguments are marginally better."). Further, we must acknowledge that the doctrine can serve a purpose in producing equitable results, as earlier noted. Thus, prudence and judicial modesty caution against singularly swimming against this tide of authority. Accordingly, we turn first to give articulation of the doctrine as applicable here; and then to apply it to each of the non-signatories, Morton, JTL, and PayDay.[7]

## IV.

We repeat once again that for the doctrine to bind a non-signatory to a forum selection clause, first, "the party must be 'closely related' to the

---

[7] Determining whether a forum selection clause can be effectively negotiated by the parties to limit its application, and thus not be subject to equitable interpretation, is unnecessary to this opinion. *See Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 442 (7th Cir. 2012) (suggesting that parties could structure forum selection clauses in such a way). That question is for another court, another day, and another case.

dispute such that it becomes 'foreseeable' that it will be bound." *Hugel*, 999 F.2d at 209 (citing *Manetti–Farrow*, 858 F.2d at 514 n.5). What remains, however, is filling in the blanks. Borrowing from the precedents, including the Third and Seventh Circuits, we extract a few fundamental factors applicable here that we will consider in determining whether these non-signatories are closely related: (1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly. *See Adams*, 702 F.3d at 439–42; *McGraw-Hill*, 909 F.3d at 63. Of course, the closely-related doctrine is context specific and is determined only after weighing the significance of the facts relevant to the particular case at hand. Thus, in line with our general understanding of equitable doctrines, we do not set out a rigid test for applying the closely-related doctrine. Instead, we merely attempt to give it definition in the context of this case. Upon considering these characteristics, we ultimately conclude that the closely-related theory does not bind Morton or JTL, but that it does bind PayDay.[8]

## A.

We will begin with Morton, who is certainly related to the Wellses in a personal sense, as their son/stepson. That relationship, in and of itself, however, is not a factor in establishing liability here. Indeed, Morton does not satisfy any of the factors that we have identified under the closely-related doctrine. First, Morton was not an owner of the franchisee, BACE, but was

---

[8] This court has indicated that non-signatories should only have contractual provisions enforced against them in "rare circumstances." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 358 (5th Cir. 2003). Moreover, given the persuasive concerns about the closely-related doctrine and that there are other avenues or forums to address Link's grievances against the non-signatories, a narrow application of the doctrine is both appropriate and necessary.

only an employee. Second, although Morton's employment with BACE allowed him to create and develop client relationships—which he apparently used in his subsequent employment by JTL—this benefit arose from his employment relationship with BACE, and does not constitute a direct benefit from the contract itself. Finally, there is no evidence that Morton was aware of the franchise agreement's forum selection clause. *See McGraw-Hill*, 909 F.3d at 65. The cease and desist letter sent to JTL after Morton had begun to work for JTL did not contain all the terms of the agreement and did not mention the forum selection clause specifically. Thus, there is no "evidentiary basis" that Morton had "an awareness of the [forum selection] clause, its contents, [or] that it might be defensively invoked." *Id.* Accordingly, we hold that the closely-related doctrine does not bind Morton to the forum selection clause of the franchise agreement. It follows that the district court lacked personal jurisdiction over Morton, and the entire judgment is reversed and vacated as to him.

## B.

Neither can JTL be bound to the forum selection clause under the closely-related doctrine. First, JTL had no ownership interest in BACE, nor vice versa—JTL is fully owned by a non-party in this case. Second, JTL received no direct benefit from the Link franchise contract. To the extent that JTL may have benefited from Morton's work with the Link clients, the benefit is attenuated and not—as required—a direct benefit arising from the BACE/Link contract itself. Finally, the record does not reflect that JTL was aware of the forum selection clause, given that its only notice of the franchise agreement was the cease and desist letter—which, again, did not contain the terms of the forum selection clause. In short, the record is bereft of any basis for binding JTL to the franchise agreement and its forum selection clause under the closely-related doctrine. Accordingly, the entire judgment against JTL is reversed and vacated.

## C.

We now turn to PayDay. We conclude that PayDay is bound to the franchise agreement's forum selection clause under the closely-related doctrine. First, PayDay, like BACE, is fully owned and operated by the Wellses, who are signatories to the BACE/Link franchise agreement. We reiterate that common ownership between signatory BACE and non-signatory PayDay is a key factor supporting the application of the closely-related doctrine here. *See, e.g., Adams*, 702 F.3d at 439–40; *McGraw-Hill*, 909 F.3d at 63; *Marano*, 254 F.3d at 757; *Hugel*, 999 F.2d at 209–10. Second, PayDay received a direct benefit from the BACE contract. As owners, the Wellses, obviously, enjoyed a direct economic benefit under the contract with Link and transferred, at least in part, this contractual benefit to PayDay, their wholly owned company. *See, e.g.*, *Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 571–72 (S.D. Tex. 2020) (non-signatories who were owned by the same entity as a signatory and who were used to circumvent the agreement were "closely related"). Third, PayDay, through its full owners and operators, the Wellses, was aware of the BACE and Link franchise's terms, including the forum selection clause. PayDay meets the requirements of being closely related and, accordingly, is liable under the franchise agreement.

## D.

In sum, the closely-related doctrine does not bind Morton or JTL to the BACE/Link contract's forum selection clause and, consequently, the judgment as to each of them is reversed and vacated for lack of personal jurisdiction.[9] The district court had jurisdiction over PayDay. The judgment

---

[9] Link has preserved, both in the district court and on appeal, two other arguments that the district court had personal jurisdiction over the non-signatories. Neither, however,

No. 21-20316

that PayDay is liable for damages, attorneys' fees, and costs is affirmed. The amount of damages, however, must be reconsidered, as discussed below.

## V.

We now turn to the remaining issues: damages, fees, and costs awarded to Link. The district court awarded Link $378,562.22 in damages for the breach of contract. It also granted Link an injunction enforcing the non-compete and non-solicitation provisions. Following Link's motion, the district court additionally granted Link $731,295.30 in attorneys' fees and $113,484.04 in costs.

---

is meritorious. First, Link argues that the non-signatories can be bound to the agreement's forum selection clause under the direct benefits equitable estoppel theory. Direct-benefits estoppel applies when "non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006). This court, however, has limited direct-benefits estoppel to when "the nonsignatory ha[s] brought suit against a signatory premised in part upon the agreement." *Bridas*, 345 F.3d at 362. Here Link, a signatory, initiated suit against the non-signatories, so direct-benefit estoppel is inapplicable to establish personal jurisdiction. Furthermore, we have noted that, in the context of the closely-related doctrine, Morton and JTL received no direct benefit from the Link/BACE contract.

Link also contends that the Texas district court had personal jurisdiction over the non-signatories because they purposefully availed themselves of the Texas courts. Link cites the Supreme Court's recognition that personal jurisdiction may arise in a forum which is "the focal point of the [injurious action] and the harm suffered." *Calder v. Jones*, 465 U.S. 783, 789 (1984). *Calder* does not apply here, however, because the non-signatories' injurious action—the competition and solicitation activities—and the harm felt by Link were all directed in Florida, not Texas. The mere fact that Link is a Texas corporation injured by the non-signatories' actions is insufficient, without other evidence, that the non-signatories had sufficient contact with Texas. Consequently, the non-signatories did not have sufficient minimum contacts to establish personal jurisdiction on this basis.

No. 21-20316

The defendants now remaining after this appeal, BACE[10] and PayDay, appeal these awards, contending that the district court erred in (A) calculating the contractual damages owed, (B) awarding both future damages and injunctive relief, and (C) determining the proper amount of attorneys' fees and costs.[11] We agree, and accordingly reverse and remand.

A.

With respect to damages, BACE and PayDay only specifically appeal the $34,633.22 awarded to Link for lost revenue damages relating to a client invoice. Under the contract, BACE owed Link a percentage of all income received from its clients, which would include a percentage of a $34,633.22 invoice sent to a BACE client. BACE apparently never paid Link its percentage of this amount under the contract and, therefore, the district court correctly concluded that defendants owed Link at least some part of the $34,633.22 invoice. BACE and PayDay correctly note, however, that the franchise agreement only entitled Link to a percentage of the receivable, which the district court even acknowledged at trial. Awarding the full amount was, therefore, an erroneous calculation of the damages owed under the contract that warrants reversal and remand for reconsideration.

B.

PayDay and BACE also challenge the district court's award of both future damages and injunctive relief as being duplicative. The district court awarded future damages of $147,900.00 and an injunction that enforced the "non-compete and non-solicitation provisions [against all the defendants] . .

---

[10] The only issues raised by BACE in this appeal relate to damages attorneys' fees, and costs—not liability itself.

[11] BACE and PayDay do not appeal the actual damages award of $196,029.00, and so that award remains unaffected by this opinion and is thereby affirmed.

. for a two-year period, starting from the effective date of the termination of the Franchise Agreement, November 6, 2019.''

In Texas, it "is a rule of general application" that "future damages cannot be recovered if a permanent injunction issues . . . ." *Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 285 (Tex. 2004), *modified on other grounds, Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Texas), LP*, 449 S.W.3d 474 (Tex. 2014); *Eberts v. Businesspeople Pers. Servs., Inc.*, 620 S.W.2d 861, 864 (Tex. Civ. App. 1981) (applying the general rule in a case involving a non-compete covenant). Link has cited no evidence that it would sustain separate future damages with an enforced injunction in place. Thereby, *Schneider*'s general rule controls—the $147,900.00 award of future damages is reversed and vacated. The injunction remains unaffected and is otherwise affirmed.

## C.

Finally, BACE and PayDay appeal the calculation of the attorneys' fees awarded to Link because the district court did not sufficiently assess one factor—the amount involved and the results obtained—in determining if an adjustment of the fee awarded was appropriate. They also challenge the costs awarded. In this opinion, we have reversed the district court's judgment with respect to two of the non-signatory defendants, JTL and Morton. We have also reversed and vacated a substantial portion of the damages awarded. Thus, the facts underlying district court's assessment of the factor at issue—*i.e.*, the results obtained by those attorneys—have significantly changed. These rulings raise questions of the appropriate amount of attorneys' fees and costs. We therefore vacate the award of attorneys' fees and costs, and remand for reconsideration in the light of this opinion.

## VI.

Summing up, in this opinion, we have:

No. 21-20316

(1) held that the closely-related doctrine may under limited circumstances bind non-signatories to a contract's forum selection clause;

(2) held that the closely-related doctrine does indeed bind non-signatory PayDay to the franchise agreement, but does not bind non-signatories Morton or JTL;

(3) reversed the district court's denial of the motion to dismiss for lack of personal jurisdiction as to Morton and JTL, and vacated the judgment in its entirety against Morton and JTL;

(4) affirmed the district court judgment that PayDay is liable under the contract, and therefore properly subject to the imposed injunction and liable for actual damages, attorneys' fees, and costs as to be recalculated on remand not inconsistent with this opinion;

(5) remanded for recalculation of the proper amount of damages owed as it pertains to the $34,633.22 client invoice;

(6) reversed and vacated the district court's award of future damages in the amount of $147,900.00;

(7) reversed and vacated the amount of attorneys' fees and costs awarded to Link, and remanded for reconsideration in the light of this opinion;

(8) affirmed the actual damages awarded in the amount of $196,029.00, as well as the injunctive relief imposed on BACE and PayDay.

AFFIRMED in part; REVERSED in part; VACATED in part; and REMANDED.