*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEWADIN CASINOS GAMING AUTHORITY,

Plaintiff-Appellant,

v

PATTERSON EARNHART REAL BIRD &
WILSON LLP, JEREMY PATTERSON, JEFFREY
S. RASMUSSEN, and JOHNATHON LOERA,

Defendants-Appellees.

FOR PUBLICATION
March 23, 2026
3:22 PM

No. 371255
Chippewa Circuit Court
LC No. 2023-017490-NM

Before: KOROBKIN, P.J., and YATES and FEENEY, JJ.

KOROBKIN, P.J.

In this legal malpractice action, plaintiff, Kewadin Casinos Gaming Authority, appeals by right the trial court's order granting summary disposition to defendants, Patterson Earnhart Real Bird & Wilson, LLP (the firm), Jeremy Patterson, Jeffrey S. Rasmussen, and Johnathon Loera. Plaintiff is a wholly owned instrumentality of the Sault Ste. Marie Tribe of Chippewa Indians (the Tribe), the firm was the Tribe's general counsel, and the other defendants were attorneys at the firm who provided legal services pursuant to the general counsel arrangement. The trial court ruled that plaintiff's lawsuit was barred by tribal sovereign immunity because defendants, as general counsel, were agents of the Tribe. In the alternative, the trial court ruled that a forum-selection clause in the general counsel agreement between the firm and the Tribe required dismissal of this action.

For the reasons stated in this opinion, we conclude that plaintiff's lawsuit is not barred by tribal sovereign immunity, and further development of the record is required to determine whether the forum-selection clause requires plaintiff to bring this suit in tribal court. Accordingly, we reverse the trial court's judgment in part, vacate it in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND AND FACTS

In 2020, the Tribe hired defendant Patterson Earnhart Real Bird & Wilson LLP, a Colorado law firm, to serve as general counsel for the Tribe. The terms of their arrangement were

memorialized in a written document, dated June 3, 2020, entitled "General Counsel Contract." The agreement, broadly speaking, provided that the firm would provide legal services and lobbying services as directed by the Tribe, established the rates at which the firm would bill for its services, and contained various other unremarkable terms and conditions. As relevant here, the agreement also contained a forum-selection clause as follows: "Upon the demand of any party, any dispute arising under or in connection with this Contract shall be resolved in the Tribal Courts of the Sault Ste. Marie Tribe of Chippewa Indians, in accordance with the laws of the Sault Ste. Marie Tribe of Chippewa Indians."

The written terms of the contract did not explicitly address the firm's representation of tribal entities that were closely related to, but legally distinct from, the Tribe.[1] Plaintiff, which was created by the Tribe to own and operate gaming establishments, is described in the Tribal Code as: (1) "a governmental instrumentality of the Tribe," Sault Ste. Marie Tribe of Chippewa Indians, Tribal Code § 94.101; (2) a "subordinate organization of the Board of Directors of the Tribe," id. § 94.105(1); and, (3) "[f]or purposes of taxation, civil jurisdiction and regulatory jurisdiction, . . . a subordinate arm of the Tribe and . . . entitled to all of the privileges and immunities of the Tribe," id. § 94.105(2). The members of the Tribe's board of directors, which exercises the sovereign and government authority of the Tribe, are also the members of plaintiff's management board; the chair of the Tribe's board is also the chair of plaintiff's board. Id. § 94.108(2)-(3).

Just days after the Tribe retained the firm as described above, the firm proposed in writing to the Tribe that, in their capacity as general counsel, they take over defending plaintiff in a federal lawsuit brought by investors who were seeking compensation after agreements to build and open casinos in Detroit and Lansing had fallen through. The firm did so, and the federal case against plaintiff was dismissed for lack of diversity jurisdiction. But the investor-plaintiffs in the dismissed lawsuit then refiled the action in state court. And according to plaintiff, in the state court proceedings, defendants as their counsel failed to comply with the Michigan Court Rules and the Michigan Rules of Evidence and acted negligently, resulting in a substantial judgment being entered against plaintiff.

Plaintiff then initiated this action against defendants in Chippewa Circuit Court, alleging legal malpractice and breach of fiduciary duty. Defendants moved for summary disposition under MCR 2.116(C)(4) and (7), asserting that the circuit court lacked jurisdiction over the matter because, inter alia, (1) the general counsel agreement specified that disputes were to be addressed in tribal court and (2) the lawsuit was barred by tribal sovereign immunity.[2]

After a hearing on the motion, the trial court concluded that (1) defendants had sovereign immunity because, as general counsel, they were agents of the Tribe, and (2) the forum-selection clause in the general counsel contract required plaintiff to file the lawsuit in tribal court. At

---

[1] A later version of the general counsel contract, signed in 2022, does explicitly reference the firm's work for the Tribe's gaming authority.

[2] Defendants also argued that the federal doctrines of infringement, preemption, and exhaustion of tribal remedies required dismissal. The trial court did not reach those issues.

defendants' request, the trial court dismissed the case with prejudice. Plaintiff moved for reconsideration, which the trial court denied.

Plaintiff now appeals.

## II. STANDARDS OF REVIEW

"This Court reviews de novo the grant or denial of a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) (quotation marks and citation omitted).

"A motion for summary disposition under MCR 2.116(C)(4) tests the trial court's subject-matter jurisdiction." *Mays v Governor*, 506 Mich 157, 180; 954 NW2d 139 (2020). "Jurisdictional questions under MCR 2.116(C)(4) are questions of law that are also reviewed de novo." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 713-714; 909 NW2d 890 (2017) (cleaned up). Parties may support or oppose a motion under MCR 2.116(C)(4) with affidavits, depositions, or other documentary evidence. *Id*. at 714. When reviewing such a motion, a trial court "must determine whether the pleadings demonstrate that the defendant is entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there was no genuine issue of material fact." *Id.* If subject-matter jurisdiction is lacking, the trial court must dismiss the action. *Id*.

Under MCR 2.116(C)(7), "dismissal of [an] action . . . is appropriate because of . . . immunity granted by law [or] agreement to litigate in a different forum . . . ." "The question whether an entity has immunity is one of law, which we review de novo." *Co Rd Ass'n of Mich v Governor*, 287 Mich App 95, 118; 782 NW2d 784 (2010). Likewise, "a trial court's dismissal of an action pursuant to a contractual forum-selection clause is properly reviewed on appeal under a de novo standard." *Turcheck v Amerifund Fin, Inc*, 272 Mich App 341, 351; 725 NW2d 684 (2006). In reviewing a motion under MCR 2.116(C)(7), "this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). "If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact." *Id*. at 429. "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Id*.

## III. ANALYSIS

### A. TRIBAL SOVEREIGN IMMUNITY

Plaintiff first argues that the trial court erred in holding that plaintiff's lawsuit is barred by tribal sovereign immunity. We agree.

As an initial matter, we address whether defendants' motion for summary disposition on grounds of tribal sovereign immunity was properly brought and considered under MCR 2.116(C)(4) (lack of subject-matter jurisdiction), MCR 2.116(C)(7) (immunity granted by law), or

both. This Court has previously affirmed dismissal of claims against a tribe on sovereign-immunity grounds under MCR 2.116(C)(7). *Huron Potawatomi, Inc v Stinger*, 227 Mich App 127; 574 NW2d 706 (1997). Therefore, it is clear that tribal sovereign immunity can be raised and decided under MCR 2.116(C)(7).

As for whether tribal sovereign immunity also implicates subject-matter jurisdiction, it appears that no binding Michigan case has squarely addressed the issue. "Generally, subject-matter jurisdiction is defined as a court's power to hear and determine a cause or matter." *O'Connell v Dir of Elections*, 316 Mich App 91, 100; 891 NW2d 240 (2016) (quotation marks and citation omitted). "More specifically, subject-matter jurisdiction is the deciding body's authority to try a case of the kind or character pending before it, regardless of the particular facts of the case." *Id*. (quotation marks and citation omitted). Under federal law, some courts treat tribal sovereign immunity as a limit on their subject-matter jurisdiction, see, e.g., *Spurr v Pope*, 936 F3d 478, 482 (CA 6, 2019); *Miner Electric, Inc v Muscogee (Creek) Nation*, 505 F3d 1007, 1009 (CA 10, 2007); *Alabama v PCI Gaming Auth*, 801 F3d 1278, 1287 (CA 11, 2015), but others have described the doctrine as only "quasi-jurisdictional" or "jurisdictional in nature," given that the immunity—unlike traditional limits on subject-matter jurisdiction—can be waived by consent, see, e.g., *Oneida Indian Nation v Phillips*, 981 F3d 157, 170-171 & n 70 (CA 2, 2020); *Pistor v Garcia*, 791 F3d 1104, 1110 (CA 9, 2015); *Ninigret Dev Corp v Narragansett Indian Wetuomuck Housing Auth*, 207 F3d 21, 28 (CA 1, 2000).[3] Under the Federal Rules of Civil Procedure, motions to dismiss on sovereign-immunity grounds are filed under FR Civ P 12(b)(1), which is labeled "lack of subject-matter jurisdiction"—in essence, the federal equivalent to MCR 2.116(C)(4)—even in those circuits that have noted differences between sovereign immunity and more traditional limits on subject-matter jurisdiction. See *Pistor*, 791 F3d at 1111.

In Michigan, although not directly on point, some cases have spoken to the relationship between sovereign immunity generally and subject-matter jurisdiction. "From the time of Michigan's statehood, this Court's jurisprudence has recognized that the state, as sovereign, is immune from suit unless it consents . . . ." *Pohutski v City of Allen Park*, 465 Mich 675, 681; 641 NW2d 219 (2002). In *Greenfield Constr Co, Inc v Mich Dep't of State Hwys*, 402 Mich 172, 194; 261 NW2d 718 (1978), our Supreme Court remarked that "it is well settled that the circuit court is without jurisdiction to entertain an action against the State of Michigan unless that jurisdiction shall have been acquired by legislative consent." Similarly, in *Manion v State Hwy Comm'r*, 303 Mich 1, 20; 5 NW2d 527 (1942), the Court stated: "The terms of the State's consent to be sued in any court define that court's jurisdiction to entertain the suit." These cases are instructive, as they strongly suggest that when an entity with sovereign immunity does not waive it by consenting to be sued, courts lack subject-matter jurisdiction to entertain such suits. We see no reason to treat tribal sovereign immunity differently. Therefore, when a party seeks summary disposition on grounds of tribal sovereign immunity, the motion can be brought and decided under MCR 2.116(C)(4) (lack of subject-matter jurisdiction) in addition or in the alternative to MCR 2.116(C)(7) (immunity granted by law).

---

[3] "Federal caselaw is not binding, but we may consider it persuasive." *Micheli v Michigan Auto Ins Placement Facility*, 340 Mich App 360, 375 n 5; 986 NW2d 451 (2022).

We turn now to the issue of whether defendants were entitled to summary disposition on grounds of tribal sovereign immunity. The United States Supreme Court has recognized that "Indian tribes are domestic dependent nations that exercise inherent sovereign authority." *Michigan v Bay Mills Indian Community*, 572 US 782, 788; 134 S Ct 2024; 188 L Ed 2d 1071 (2014) (quotation marks and citations omitted). As part of their sovereignty, tribes are not subject to suit without their consent or authorization by Congress. *Id*. at 789. This sovereignty extends to state courts and to suits involving commercial activity occurring off tribal land. *Id*. at 789-791.

Here, the trial court held that defendants—the Tribe's retained attorneys—were protected by tribal sovereign immunity because they are being sued in their capacity as the Tribe's agents. On the surface, there is authority to support the position that sovereign immunity can extend to a tribe's legal counsel. See, e.g., *Catskill Dev LLC v Park Place Entertainment Corp*, 206 FRD 78, 91 (SDNY, 2002) ("As a general proposition, a tribe's attorney, when acting as a representative of the tribe and within the scope of his authority, is cloaked in the immunity of the tribe just as a tribal official is cloaked in that immunity."); *Great Western Casinos, Inc v Morongo Band of Mission Indians*, 74 Cal App 4th 1407; 88 Cal Rptr 2d 828 (1999) ("The non-Indian law firm and general counsel are similarly immune from suit for actions taken or opinions given in rendering legal services to the tribe.").[4] But that is not the end of the inquiry because in this instance, defendants are attempting to assert immunity as tribal agents against claims in litigation brought by plaintiff, a tribal entity and wholly owned and subordinate instrumentality of the Tribe itself. It would be peculiar if immunity—"a necessary corollary to Indian sovereignty and self-governance," *Bay Mills*, 572 US at 788 (quotation marks and citation omitted)—could be invoked by a tribe's agents where, as here, the agents are being sued by a tribal entity for allegedly violating their duty to the tribe.

To solve this puzzle, we turn to the United States Supreme Court's decision in *Lewis v Clarke*, 581 US 155; 137 S Ct 1285; 197 L Ed 2d 631 (2017). In that case, the Court considered "whether an Indian tribe's sovereign immunity bars individual-capacity damages against tribal employees for torts committed within the scope of their employment . . . ." *Id*. at 157. The Court instructed that we "should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit," which in turn requires determining "whether the remedy sought is truly against the sovereign." *Id*. at 161-162. The Court held that the Indian tribe was not the real party in interest in a suit against a tribal employee for torts committed within the scope of his employment, as the suit would "not require action by the sovereign or disturb the sovereign's property." *Id*. at 163 (cleaned up). Therefore, the Court further held, "tribal sovereign immunity . . . is simply not in play." *Id*.

Applying these principles here, this Court must determine who the "real party in interest" is to discern whether tribal sovereign immunity bars plaintiff's suit. If the real party in interest is indeed the Tribe, then tribal sovereign immunity applies. *Id*. at 163. But that is clearly not the case. Plaintiff is not seeking relief from the sovereign but instead from defendants in their

---

[4] "Caselaw from other states is not binding but may be considered for its persuasive value." *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 347 Mich App 533, 547; 15 NW3d 356 (2023).

nonsovereign capacities for actions they took or failed to take in the scope of their work as counsel. If plaintiff succeeds in its suit, the judgment will not operate against the Tribe. Instead, as in *Lewis*, the suit by plaintiff against defendants seeks "to recover for [their] personal actions" while serving as plaintiff's counsel, which "will not require action by the sovereign or disturb the sovereign's property." *Id.* (cleaned up). Accordingly, the real parties in interest are defendants, not the Tribe. Therefore, sovereign immunity does not apply to defendants, and the trial court erred by concluding otherwise. See *id*.

## B. FORUM-SELECTION CLAUSE

Next, plaintiff contends that the trial court erred in holding that the forum-selection clause in the general counsel contract required plaintiff to litigate its claims in tribal court. We conclude that further development of the record is needed to determine whether plaintiff's case may be properly dismissed on forum-selection grounds.

## 1. CLOSELY-RELATED DOCTRINE

Plaintiff argues that it is not bound by the forum-selection clause because the Tribe, not plaintiff, signed the general counsel contract, and plaintiff cannot be bound by a clause in a contract it did not sign. Noting the apparent lack of Michigan authority on this issue, we turn to other jurisdictions for guidance. A majority of circuits of the United States Courts of Appeals recognize and use the "closely-related doctrine" to determine whether a nonsignatory party can be bound by a contract's forum-selection clause. See *Franlink Inc v BACE Servs, Inc*, 50 F4th 432, 439 (CA 5, 2022); *Fasano v Li*, 47 F4th 91, 103-104 (CA 2, 2022); *In re McGraw-Hill Global Ed Holdings LLC*, 909 F3d 48, 63 (CA 3, 2018); *Marano Enterprises of Kansas v Z-Teca Restaurants, LP*, 254 F3d 753, 757-758 (CA 8, 2001); *Lipcon v Underwriters at Lloyd's, London*, 148 F3d 1285, 1299 (CA 11, 1998); *Baker v LeBoeuf, Lamb, Leiby & Macrae*, 105 F3d 1102, 1106 (CA 6, 1997); *Hugel v Corp of Lloyd's*, 999 F2d 206, 209-210 (CA 7, 1993); *Manetti-Farrow, Inc v Gucci America, Inc*, 858 F2d 509, 514 n 5 (CA 9, 1988). Many state courts have recognized and employed the doctrine as well. See *Highland Crusader Offshore Partners, LP v Targeted Delivery Technologies Holdings, Ltd*, 184 App Div 3d 116, 122; 124 NYS3d 346 (2020); *Ex parte Killian Constr Co*, 276 So 3d 201, 209 (Ala, 2018); *Peterson v Evapco, Inc*, 238 Md App 1, 33; 188 A3d 210 (2018); *Pinto Tech Ventures, LP v Sheldon*, 526 SW3d 428, 444 (Tex, 2017); *Keehan Tenn Investment, LLC v Praetorium Secured Fund I, LP*, 71 NE3d 325, 333-334 (Ohio App, 2016); *Solargenix Energy, LLC v Acciona, SA*, 17 NE3d 171, 188 (Ill App, 2014); *Caperton v AT Massey Coal Co, Inc*, 225 W Va 128, 153; 690 SE2d 322 (2009); *CH Robinson Worldwide, Inc v FLS Transp, Inc*, 772 NW2d 528, 534 (Minn App, 2009); *Deloitte & Touche v Gencor Indus, Inc*, 929 So 2d 678, 684 (Fla App, 2006); *Titan Indemnity Co v Hood*, 895 So2d 138, 148 (Miss, 2004); *Net2Phone, Inc v Superior Court*, 109 Cal App 4th 583, 588; 135 Cal Rptr 2d 149 (2003); *Grott v Jim Barna Log Sys-Midwest, Inc*, 794 NE2d 1098, 1104-1105 (Ind App, 2003); *Brinson v Martin*, 220 Ga App 638, 640; 469 SE2d 537 (Ga App, 1996).

Under this doctrine, nonsignatories to an agreement may be bound by, and enforce, forum-selection clauses where, under the circumstances, the nonsignatories enjoyed a "sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound." *Franlink*, 50 F4th at 439 (quotation marks and citation omitted). In applying this standard, courts

consider various factors, including "(1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally[,] and (4) awareness of the forum selection clause particularly." *Id*. at 442. That said, these factors are not exclusive; "the closely-related doctrine is context specific and is determined only after weighing the significance of the facts relevant to the particular case at hand" rather than being subject to a "rigid test." *Id*.

As a matter of first impression, we adopt the closely-related doctrine; we are persuaded by the weight of federal and state authority on this issue. But recognizing that the trial court had neither the benefit of our decision that the doctrine applies in Michigan nor complete briefing from the parties to properly situate the facts of the case within the closely-related doctrine's framework, we conclude that a remand is appropriate for the trial court to apply the doctrine in the first instance and determine whether plaintiff is bound by the forum-selection clause at issue. The trial court should provide the parties an opportunity to supplement the record and may, in its discretion, allow discovery to develop the record as needed.

Applying the closely-related doctrine to these circumstances, the trial court's analytical focus will be whether plaintiff had a sufficiently close nexus to the Tribe in this particular context such that it was foreseeable that plaintiff would be bound by the general counsel contract and therefore the forum-selection clause. Without constraining the trial court or the parties in how they ultimately develop and analyze the issue, we offer the following commentary based on the record now before us and the equitable factors delineated in *Franlink*, 50 F4th at 442.

First, considering common ownership, see *id.*, plaintiff describes itself in its complaint as a "wholly owned entity of the Tribe." Under the Tribal Code, plaintiff is an "instrumentality of the Tribe," Sault Ste. Marie Tribe of Chippewa Indians, Tribal Code § 94.101, a "subordinate organization of the Board of Directors of the Tribe," *id*. § 94.105(1), and, "[f]or purposes of taxation, civil jurisdiction and regulatory jurisdiction, . . . a subordinate arm of the Tribe and . . . entitled to all of the privileges and immunities of the Tribe," *id*. § 94.105(2). Additionally, the members of the Tribe's board of directors are also the members of plaintiff's management board and the chair of the Tribe's board is also the chair of plaintiff's board. *Id*. § 94.108(2)-(3). On these facts, the common-ownership factor weighs in favor of plaintiff being bound. See *Franlink*, 50 F4th at 443.

Second, we consider direct benefits obtained from the contract. See *id.* at 442. Here, the record is somewhat unclear as to whether plaintiff directly benefited from the contract by using legal services provided per the agreement. The June 2020 general counsel contract states that the firm would provide legal services as directed by the Tribe, and shortly after the contract was signed the firm proposed in writing to the Tribe that "as General Counsel we can take on this case," referring to the federal lawsuit in which Kewadin was a defendant. But plaintiff's complaint also alleges that plaintiff's management board (i.e., not the Tribe) "engaged" defendants to represent plaintiff. Although it is entirely possible that the parties reasonably understood and accepted that engagement to be under the auspices of the firm's general counsel arrangement with the Tribe, the parties should have an opportunity to fill any gaps in the record on this question for the trial court's informed consideration.

Third, we consider knowledge of the agreement generally and fourth, we consider awareness of the forum-selection clause particularly. See *Franlink*, 50 F4th at 442. The record appears to demonstrate that plaintiff was aware of both because, again, the members of the Tribe's board of directors, which entered into the general counsel contract with defendants, are also the members of plaintiff's management board, which, according to plaintiff's complaint, engaged defendants to represent plaintiff. The record also shows that the chair of the Tribe's board, who was also the chair of plaintiff's board, personally signed the general counsel contract. Insofar as the record demonstrates that plaintiff knew of the general counsel contract generally and its forum-selection clause in particular, these factors also weigh in favor of plaintiff being bound.

Finally, we reiterate that the above factors are not exclusive, the closely-related doctrine is context-specific, and the trial court must "weigh[] the significance of the facts relevant to the particular case at hand." *Id*. The ultimate question for the trial court on remand is whether plaintiff, under these particular circumstances, had a sufficiently close nexus to the Tribe such that it was foreseeable that plaintiff would be bound by the forum-selection clause in the general counsel contract. See *id*. at 439.

## 2. ENFORCEABILITY UNDER MICHIGAN LAW

Plaintiff's only other argument on appeal regarding the forum-selection clause is that it is unenforceable under Michigan law. "In general, Michigan courts enforce forum-selection clauses, and Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law provisions." *Superior Roll, LLC v Mach Mktg Int'l, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369279); slip op at 4. "A party seeking to avoid a contractual forum-selection clause bears a heavy burden of showing that the clause should not be enforced." *Turcheck*, 272 Mich App at 348. But plaintiff argues that under MCL 600.745,[5] which requires

---

[5] MCL 600.745 provides, in relevant part:

> (1) As used in this section, "state" means any foreign nation, and any state, district, commonwealth, territory, or insular possession of the United States.
>
> * * *
>
> (3) If the parties agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court shall dismiss or stay the action, as appropriate, unless any of the following occur:
>
> (a) The court is required by statute to entertain the action.
>
> (b) The plaintiff cannot secure effective relief in the other state for reasons other than delay in bringing the action.
>
> (c) The other state would be a substantially less convenient place for the trial of the action than this state.

courts to dismiss or stay an action under certain circumstances "[i]f the parties agreed in writing that an action on a controversy shall be brought only in another state," MCL 600.745(3), the word "state" is defined as "any foreign nation, and any state, district, commonwealth, territory, or insular possession of the United States," MCL 600.745(1)—a list of jurisdictions that does not expressly include Indian tribes. Therefore, plaintiff argues, the forum-selection clause at issue here cannot be enforced.

We reject plaintiff's argument. As an initial matter, plaintiff did not raise this objection in the trial court proceedings.

> In civil cases, Michigan follows the "raise or waive" rule of appellate review. Under that rule, litigants must preserve an issue for appellate review. To preserve an issue, the party asserting error must demonstrate that the issue was raised in the trial court. Moreover, the moving party must show that the same basis for the error claimed on appeal was brought to the trial court's attention. If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue. However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented. [*Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289-290; 14 NW3d 472 (2023) (quotation marks and citations omitted).]

Here, plaintiff acknowledges that in the trial court it did not raise the point that tribal jurisdictions are not "states" under MCL 600.745. We therefore can consider the issue waived. However, this Court may address an unpreserved issue if it raises a question of law and the necessary facts have been presented. *Tolas*, 347 Mich App at 289-290. Because those circumstances are present here, we choose to address the issue.

Plaintiff is correct that MCL 600.745 does not expressly define "state" as including tribal nations. But nor does MCL 600.745 explicitly prohibit courts from enforcing a forum-selection clause that requires parties to litigate in a forum that is not expressly included in the statute's scope. And MCR 2.116(C)(7) provides for dismissal on grounds of "an agreement . . . to litigate in a different forum," without specifying that the forum must be independently designated or approved by statute. Significantly, Indian tribes have long been "recognized . . . as distinct, independent political communities qualified to exercise many of the powers and prerogatives of self-government," *Plains Commerce Bank v Long Family Land & Cattle Co*, 554 US 316, 327; 128 S Ct 2709; 171 L Ed 2d 457 (2008) (quotation marks and citation omitted), and "[t]ribal courts play

---

(d) The agreement as to the place of the action is obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.

(e) It would for some other reason be unfair or unreasonable to enforce the agreement.

a vital role in tribal self-government," *Iowa Mut Ins Co v LaPlante*, 480 US 9, 14; 107 S Ct 971; 94 L Ed 2d 10 (1987). Consequently, interests of comity weigh in favor of treating such jurisdictions comparably to other states and foreign nations for purposes of interpreting and enforcing a contract's forum-selection clause—particularly where, as here, a tribe itself has agreed by contract that its court is the proper forum. See *Bird v Glacier Electric Coop, Inc*, 255 F3d 1136, 1142 (CA 9, 2001) ("The importance of tribal courts and the dignity we accord their decisions will weigh in favor of comity . . . ."); *Burrell v Armijo*, 456 F3d 1159, 1173 (CA 10, 2006) (recognizing that federal policies instruct courts "to provide great deference to tribal court systems").

Plaintiff makes no argument that the tribal court named in the contract would be incapable of resolving the dispute. See Sault Ste. Marie Tribe of Chippewa Indians, Tribal Code § 81.103 (providing for tribal court jurisdiction "[w]here the Plaintiff is the Tribe or a Tribal entity"). Nor does plaintiff contend that any of the equitable exceptions enumerated in MCL 600.745(3) precludes or weighs against enforcement of the clause. Absent a compelling reason grounded in law or equity, failing to enforce a forum-selection clause "would unduly interfere with the parties' freedom to contract and should generally be avoided." *Turcheck*, 272 Mich App at 350. Thus, plaintiff's argument under MCL 600.745, without more, is inadequate to meet its "heavy burden of showing that the clause should not be enforced." *Id.* at 348.

## C. DISMISSAL WITH OR WITHOUT PREJUDICE

Finally, plaintiff contends that even if dismissal were appropriate, the trial court erred by dismissing the case with prejudice as opposed to without prejudice. We agree.

"The decision whether to grant dismissal with or without prejudice, by definition, determines whether a party may refile a claim or whether the claim is permanently barred. Thus, in deciding whether dismissal should be with or without prejudice, the trial court should consider whether the doctrine of res judicata would bar subsequent actions involving the same claim." *ABB Paint Finishing, Inc v Nat'l Union Fire Ins Co of Pittsburgh*, 223 Mich App 559, 562-563; 567 NW2d 456 (1997). An action can be barred under the doctrine of res judicata only when the prior action was adjudicated "on the merits." *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006).

As we have determined that the trial court erred by dismissing this case on grounds of tribal sovereign immunity, that leaves the forum-selection clause as a potentially proper basis for dismissal, should the trial court conclude on remand that plaintiff is bound by that clause under the closely-related doctrine. Our caselaw is clear: "A dismissal based on a contractual forum-selection clause is not an adjudication on the merits." *Turcheck*, 272 Mich App at 351. Accordingly, such dismissal would not, under the doctrine of res judicata, bar plaintiff from refiling the action in tribal court. Therefore, if on remand the trial court agrees with defendants that plaintiff is bound by the forum-selection clause, dismissal of plaintiff's claims on such grounds would be "properly characterized as a dismissal without prejudice," *id*., and the trial court's entry of judgment should so state.

-10-

## IV. CONCLUSION

In sum, and for the reasons stated, plaintiff's claims are not barred by tribal sovereign immunity, and we remand for the trial court to apply the "closely related" doctrine in the first instance to determine whether plaintiff is bound by the forum-selection clause.[6] Because dismissal based on a forum-selection clause is not an adjudication on the merits, should the trial court conclude on remand that plaintiff is bound by the forum-selection clause, dismissal must be characterized as without prejudice.

Accordingly, the trial court's order is reversed in part and vacated in part, and we remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Daniel S. Korobkin
/s/ Christopher P. Yates
/s/ Kathleen A. Feeney

---

[6] Because we are remanding for further proceedings on the forum-selection issue, we decline to reach defendants' arguments (which the trial court also did not reach) that dismissal was required under the doctrines of infringement, preemption, and exhaustion of tribal remedies. Should the trial court determine on remand that dismissal is not warranted on forum-selection grounds, defendants are free to renew their request for summary disposition on these remaining issues.